GIBSON DUNN

Robert Weigel
Partner
T: +1 212.351.3845
M: +1 917.573.8265
rweigel@gibsondunn.com

January 22, 2026

VIA CM/ECF

The Honorable Marcia M. Henry
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Fritz et al. v. Iran and China Investment Development Group*, No. 25-cv-7093

Dear Judge Henry:

Plaintiffs write to inform the Court of significant developments that underscore their urgent need for relief and respectfully renew their request for entry of an ex parte order of attachment for the reasons set forth in their motion papers. *See* Dkts. 69–73. Since the Court deferred decision on Plaintiffs' motion for attachment of 127,271 Bitcoin ("Bitcoin") belonging to the Iran and China Investment Development Group, thousands of other creditors holding $40 billion in judgments against Iran have filed or stated in court filings that they will soon be filing copycat claims, piggybacking on Plaintiffs' allegations and seeking to obtain priority ahead of Plaintiffs. Plaintiffs learned yesterday that at least one such request seeking an ex parte writ of execution against the Bitcoin has been filed in a different jurisdiction. Immediate ex parte attachment is thus needed to preserve Plaintiffs' interest in the Bitcoin against these copycat claimants. Such relief is without prejudice to any objection that the government, the Iran and China Investment Development Group, or any other party may have, as, pursuant to CPLR 6211, Plaintiffs will be required to promptly file a motion to confirm the ex parte attachment, at which time all interested parties can be heard. Thus, there is no prejudice to the government in granting Plaintiffs' motion now.

On December 26, 2025, Plaintiffs—victims of terrorist atrocities facilitated by the Islamic Republic of Iran—filed their Complaint seeking execution and turnover against the Bitcoin. *See* Dkt. 1. Once the Complaint was fully docketed, Plaintiffs filed an emergency motion for an order of attachment to protect their rights against competing claims to the subject Bitcoin. *See* Dkt. 69.[1] Plaintiffs' motion requested attachment ex parte, as authorized by CPLR 6211, which is applicable here pursuant to FRCP 69, because of the numerous entities and individuals seeking to bring claims against the Bitcoin in a related forfeiture proceeding, as well as their concerns that thousands of judgment creditors of Iran would file copycat actions in the hopes of jumping the line. Recent events have proven Plaintiffs correct.

[1] Plaintiffs also promptly filed a claim against the Bitcoin in the related forfeiture proceeding, *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-05745 (E.D.N.Y.) ("*Forfeiture Action*"), which action they had previously identified as related to this new proceeding. Plaintiffs are the only Iranian terrorism victims to have timely filed their claims in the forfeiture proceeding.

On December 31, 2025, this Court entered an order "deferring decision" on Plaintiffs' motion to provide the U.S. government the opportunity to offer its views, while noting that "there is no risk of dissipation of the assets now that they are in the Government's possession." Dec. 31, 2025 Order. While that statement was true at the time, Iranian creditors holding more than $670 million in judgments against Iran have since filed a motion for an ex parte writ of execution against these same Bitcoin in the Southern District of New York in a blatant attempt to circumvent this Court. *See* Dkts. 11470, 11471, 11473, *In re Terrorist Attacks on September 11, 2001*, No. 1:03-md-01570 (S.D.N.Y. Jan. 21, 2026) ("*9/11 Actions*") (attached as Exhibit A). And thousands more Iranian creditors holding approximately $40 billion in judgments against Iran have filed copycat claims (or motions for leave to do so) in the related forfeiture proceeding while affirming that they will soon be filing their own individual attachment actions against the Bitcoin. Three sets of these Iranian judgment creditors also have sought leave pursuant to 28 U.S.C. § 1610(c) to execute on the Bitcoin in the Southern District of New York. *9/11 Actions* Dkts. 11458, 11461, 11465. These other claims explicitly cite Plaintiffs' complaint and attachment motion as the factual basis for their motions, copying Plaintiffs' papers in whole or in part. *See Forfeiture Action* Dkts. 52, 56-1, 68, 69, 73-1, 86; *see also 9/11 Actions* Dkt. 11471, at 6–7 (citing Fritz Plaintiffs' papers in this suit as basis for the Bitcoin being Iranian).

Each of these new claims threatens the Fritz Plaintiffs' interests in the Bitcoin. Under New York law, priority is based on when an attachment is served on the property (or delivered to a law enforcement officer for service). *See* CPLR § 6226. If a court in one of these other actions issues an ex parte writ of attachment or execution against the Bitcoin that is then served before this Court adjudicates Plaintiffs' emergency attachment motion, the copycat claimants could then assert priority over Plaintiffs. Given the thousands of other claimants with billions of dollars of claims against the Bitcoin all seeking to jump the line to establish priority, Plaintiffs face a significant risk that their interest in the Bitcoin will be stymied, if not extinguished, if the Court delays decision until after the government files its response on February 9.

Plaintiffs have spent months and significant time and resources investigating the Bitcoin at issue and pursuing their rights to collect on their judgments against Iran. And New York law "favor[s] a diligent creditor over creditors that are less diligent." *In re Liquidation of Jugobanka, A.D.*, 995 N.Y.S.2d 906, 909 (Sup. Ct. 2014). It would be wholly inequitable for copycat claimants to rely on Plaintiffs' diligence to obtain attachment and priority in the Bitcoin ahead of Plaintiffs.

Ex parte attachment is designed for precisely these circumstances—*i.e.*, to protect creditors where there is significant risk of asset dissipation. *See* Siegel, N.Y. Prac. § 316 (6th ed.) ("ex parte procedure is preferred" given the risk of asset dissipation). It does this through a two-step process: the issuance of an initial writ, followed within 10 days after levy by the filing of a confirmation motion on notice to the relevant parties that determines whether the writ will remain in place. Once an attachment has been issued ex parte, Plaintiffs' priority as first movers will be preserved. At the same time, any interested parties—including the government—will still be entitled to object to and challenge the attachment, and the Court must adjudicate those objections before the attachment can be confirmed. *See* CPLR § 6211(b). The issuance of an ex parte writ simply ensures that Plaintiffs are not left exposed while those objections are being resolved.

Although Plaintiffs understand the Court's desire to hear the views of the government before adjudicating their motion, the copycat claims and attachment efforts against the Bitcoin

have increased exponentially in the days since the Court issued its order on December 31, 2025 deferring decision on the motion, and since the government requested an extension of time to respond to the Court's directive. *See* Dkt. 81. In light of the thousands of copycat claimants now seeking to satisfy tens of billions of dollars of judgments against the Bitcoin in separate actions before other judges, Plaintiffs respectfully renew their request that the Court grant them an immediate attachment ex parte, without waiting for the government's response on February 9. Otherwise, Plaintiffs may lose any ability to satisfy their judgments with the Bitcoin. The government's views can be heard as part of the confirmation process.

Sincerely,

/s/ *Robert L. Weigel*
Robert L. Weigel