# GIBSON DUNN

Robert Weigel
Partner
T: +1 212.351.3845
M: +1 917.573.8265
rweigel@gibsondunn.com

January 23, 2026

VIA CM/ECF

The Honorable Marcia M. Henry
United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Fritz et al. v. Iran and China Investment Development Group*, No. 25-cv-7093

Dear Judge Henry:

  Plaintiffs respectfully submit this response to the government's letter, Dkt. 88, opposing entry of an immediate ex parte attachment of the 127,271 Bitcoin at issue. The government does not dispute that it can raise any and all arguments against attachment at the confirmation stage, as CPLR 6211(b) expressly contemplates. Nor does the government articulate any reason that it would suffer harm from following the ordinary course of New York law attachment proceedings and raising its objections during confirmation. Tellingly, the government also does not dispute that the factual premise of the Court's order deferring decision on Plaintiffs' attachment motion—*i.e.*, that "there is no risk of dissipation of the assets"—has changed. Dec 31, 2025 Order. Indeed, the government acknowledges that "a profusion of additional TRIA claimants ha[s] emerged" in the weeks since that order, including "a turnover action" against the Bitcoin in another jurisdiction. Dkt. 88, at 2. And while the government contends that the assets are "secure and in no danger of dissipation" because they are held in government custody, *id.*, it ignores the fact that if other Iranian creditors are successful in their copycat motions, they could obtain priority ahead of Plaintiffs and vitiate Plaintiffs' interest in the Bitcoin, even while the Bitcoin remain in government custody.

  Rather than challenging the factual basis for Plaintiffs' renewed request that the Court order attachment ex parte, Dkt. 85, the government briefly contends that Plaintiffs cannot show a likelihood of success on the merits of their complaint. Dkt. 88, at 1. But notably, it does not challenge the array of evidence that Plaintiffs have marshalled showing that the Bitcoin are Iranian. *See* Dkts. 69–73. Instead, the government offers a meritless legal argument about the applicability of the Terrorism Risk Insurance Act ("TRIA"), an argument flatly rejected by the very precedent it cites and contradicted by the governing executive orders and regulations. Specifically, the government wrongly asserts that the Bitcoin "is not a 'blocked asset'" under TRIA because the Bitcoin purportedly were not frozen under the International Emergency Economic Powers Act ("IEEPA") and were instead "seized" in the "civil forfeiture proceeding." Dkt. 88, at 1.

  The Second Circuit's decision in *Kirschenbaum v. 650 Fifth Avenue and Related Properties*, 830 F.3d 107 (2d Cir. 2016), which the government cites to support its argument, Dkt. 88, at 2, reaches exactly the opposite conclusion. *Kirschenbaum* explains that under Executive Order 13,559, which was issued "under the authority conferred on [the President] by IEEPA," 830

F.3d at 137, "[a]ll property and interest in property of the Government of Iran, including the Central Bank of Iran, that are in the United States, that hereafter come within the United States, or that hereafter come within the possession or control of any United States person, including any foreign branch, *are blocked* and may not be transferred, paid, exported, or otherwise dealt in," 77 Fed. Reg. 6,659, 6,659 (Feb. 8, 2012) (emphasis added). Thereafter, Executive Order 13,559 was codified into federal regulations, which state the same thing. *See* 31 C.F.R. § 560.211. Accordingly, as the Second Circuit held in *Kirschenbaum*, all "assets belonging" to the "Government of Iran," which includes agencies or instrumentalities of Iran, *see* TRIA, § 201(a), are "*automatically blocked*" when they enter the United States, 830 F.3d at 137 (emphasis added). The Second Circuit reiterated this point in *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022), explaining that it "held in [*Kirschenbaum*] that—regardless of whether it has been [individually] frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is 'blocked' within the meaning of TRIA."

As a result, under Executive Order 13,599 and the Iranian Transactions and Sanctions Regulations, the Bitcoin at issue were "blocked" under IEEPA—and thus blocked for purposes of TRIA, *see* § 201(d)(2) (defining a "blocked asset" as "any asset" "frozen" under IEEPA)—as soon as they came into the United States, which occurred no later than when the government obtained the Bitcoin at issue.

The government's subsequent forfeiture action against the Bitcoin—which it contends "authoriz[ed] [the government] to control" the Bitcoin "through another means," Dkt. 88, at 2 (quoting *Kirschenbaum*, 830 F.3d at 139)—does not remove the Bitcoin from TRIA's reach. In *Kirschenbaum* itself, the government had a "civil forfeiture action" against the assets at issue that operated in parallel to the plaintiffs' TRIA action. 830 F.3d at 121. The government's civil forfeiture action did not unblock the assets or eliminate the plaintiffs' claims under TRIA—to the contrary, the Second Circuit affirmed TRIA's independent operation, separate from a court-appointed monitor over the assets. *See id.* at 139–41; *see also Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 639 (D.C. Cir. 2025) (rejecting argument that "initiat[ing] forfeiture proceedings" or even the issuance of a license allowing the government to pursue forfeiture, unblocks Iranian assets for purposes of TRIA).

Although the government is wrong, the Court need not adjudicate its objections at this juncture. The government will have a full opportunity to present its arguments against attachment—and the Court will be required to consider them—at confirmation. *See* CPLR § 6211(b). Plaintiffs have presented reams of evidence supported by the affidavits of two highly qualified experts showing that it is "probable" that they "will succeed on the merits." CPLR § 6212(a); *see* Dkts. 69–73. By definition, an affirmative case is all that is required for ex parte attachment, and it is "not a very difficult burden." Siegel, N.Y. Prac. § 316 (6th ed.). Indeed, "all legitimate inferences should be drawn in favor of the party seeking attachment." *Hawkins v. Zoegall*, 2023 WL 4106645, at *6 (E.D.N.Y. June 20, 2023) (quoting *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 306 (S.D.N.Y. 2010)).

Far from constituting an "extraordinary remedy," Dkt. 88, at 2, as Siegel explains, ex parte attachment is the "preferred" and ordinary means of attachment created by New York law, Siegel, N.Y. Prac. § 316.  It is the government who inverts the ordinary course by insisting that it must have a full opportunity to be heard before the attachment can issue, effectively putting confirmation before attachment in contravention of the statutory process set by CPLR 6211.  Given the competing claims of the copycat creditors, which the government freely acknowledges, the Court should act now to secure Plaintiffs' interests.  It would be wholly unjust for other Iranian creditors to rely on Plaintiffs' extensive evidentiary showing to jump the line ahead of them.

Sincerely,

/s/ *Robert L. Weigel*
Robert L. Weigel