# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOALA FRITZ, et al.,<br><br>                  Plaintiffs,<br><br>    v.<br><br>IRAN AND CHINA INVESTMENT DEVELOPMENT GROUP, d/b/a LUBIAN.COM,<br><br>                  Defendant. | Civil Action No. 1:25-cv-07093 |

## <u>OPPOSITION TO MOTION TO INTERVENE</u>

Date of Service: February 20, 2026

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND.............................................................................................................. 2

LEGAL STANDARD...................................................................................................... 5

ARGUMENT .................................................................................................................. 6

      I.      Movants Have Failed To Establish The Substantial, Legally Protectable, Non-Contingent Interest That Rule 24(a)(2) Requires..................................................... 6

      II.     Movants' Bid To Intervene Is Untimely And Would Significantly Prejudice Plaintiffs........................................................................................................... 9

            a.     Movants "Knew Or Should Have Known" Of Their Purported Interests Months Before This Motion........................................................................ 10

            b.     Movants' Delay Prejudices Plaintiffs ...................................................... 12

            c.     Movants Will Not Be Prejudiced By Denial of Intervention.................... 13

            d.     Unusual Circumstances Warrant Denial of Intervention .......................... 14

      III.    If Intervention Is Granted, The Court Should Adopt A Structured, Priority-Preserving Framework .......................................................................................... 15

CONCLUSION ............................................................................................................. 16

CERTIFICATE OF COMPLIANCE

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

**Cases**

*In re 650 Fifth Ave. & Related Props.*,
    2015 WL 13700951 (S.D.N.Y. Mar. 12, 2015) ...................................................................12

*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*,
    160 F.4th 38 (2d Cir. 2025) .................................................................................................7

*Andrews v. Sony/ATV Music Publ'g, LLC*,
    2017 WL 770614 (S.D.N.Y. Feb. 24, 2017) ........................................................................11

*Authors Guild v. Google, Inc.*,
    2009 WL 3617732 (S.D.N.Y. Nov. 4, 2009) .......................................................................12

*Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*,
    2020 WL 5350271 (S.D.N.Y. Sept. 4, 2020) ................................................................11, 13

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001) ........................................................................................6, 10, 11

*Byrd v. Republic of Honduras*,
    613 F. App'x 31 (2d Cir. 2015) ..........................................................................................9

*In re Chalasani*,
    92 F.3d 1300 (2d Cir. 1996) ..............................................................................................11

*Citizens Accord, Inc. v. Town of Rochester*,
    235 F.3d 126 (2d Cir. 2000) ...............................................................................................7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    2023 WL 4826467 (D. Del. July 27, 2023) .......................................................................16

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*,
    847 F.2d 1038 (2d Cir. 1988) .............................................................................................11

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000) .........................................................................................9, 13

*Int'l Controls Corp. v. Vesco*,
    535 F.2d 742 (2d Cir. 1976) .........................................................................................6, 7, 9

*Levinson v. Kuwait Fin. House (Malaysia) Berhad*,
    44 F.4th 91 (2d Cir. 2022) ..................................................................................................9

*Levin v. United States*,
    633 F. App'x 69 (2d Cir. 2016) ...................................................................................10, 12, 14

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018) ........................................................................................8

*In re Liquidation of Jugobanka, A.D.*,
  995 N.Y.S.2d 909 (N.Y. Sup. 2014) ...........................................................................15

*Mitchell v. Garrison Protective Servs., Inc.*,
  819 F.3d 636 (2d Cir. 2016) ......................................................................................13

*Mitchell v. Lyons Pro. Servs., Inc.*,
  109 F. Supp. 3d 555 (E.D.N.Y. 2015) ........................................................................13

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) .............................................................................5, 9, 10

*NAACP v. New York*,
  413 U.S. 345 (1973) .........................................................................................9, 10

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Sun*,
  1994 WL 463009 (S.D.N.Y. Aug. 25, 1994) ..............................................................13

*Peterson v. Islamic Republic of Iran*,
  2018 WL 3019878 (S.D.N.Y. June 18, 2018) .............................................................14

*Republic of Philippines v. Christie's*,
  2000 WL 1056300 (S.D.N.Y. Aug. 1, 2000) ..............................................................13

*Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y.*,
  346 F.3d 264 (2d Cir. 2003) ........................................................................................6

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ..........................................................................................14

*U.S. Equal Emp. Opportunity Comm'n v. Birchez Assocs., LLC*,
  2021 WL 1115513 (N.D.N.Y. Mar. 24, 2021) ............................................................14

*U.S. ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fid. Ins. Co.*,
  2019 WL 4126473 (S.D.N.Y. Aug. 30, 2019) ............................................................12

*Wash. Elec. Co-Op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) ....................................................................................5, 9

**Statutes**

28 U.S.C. § 1608 ...................................................................................................9

TRIA § 201 .........................................................................................................6

CPLR § 6226 ......................................................................................................15

**Rules**

Fed. R. Civ. P. 24 ...........................................................................................................1, 2, 5, 8, 10

Fed. R. Civ. P. 54 ...............................................................................................................1, 7, 8

**Other Authorities**

*Arkham Uncovers $3.5B Heist – The Largest Ever*, Arkham (Aug. 2, 2025),
    https://tinyurl.com/4msrnwcf .....................................................................................................3

## INTRODUCTION

Proposed intervenors ("Movants") claim that they are entitled to intervene as of right in this action so that they can enforce purportedly "final judgments" against Iran under the Terrorism Risk Insurance Act ("TRIA").  MOL 2.  But Movants have failed to establish that they hold final, executable judgments—and thus may not pursue enforcement under TRIA.  Because their theory of execution is meritless, Movants lack the substantial, legally protected, and non-contingent "interest" required for intervention as of right.  Fed. R. Civ. P. 24(a)(2).

To substantiate Movants' "final judgments," Movants' papers and supporting documents point to a handful of interlocutory orders entered against Iran in the 9/11 litigation pending in the Southern District of New York.  Yet none of these interlocutory orders reflects an enforceable, final judgment.  One set of orders (which Movants say constitute their "first judgment") reflects an award of compensatory and punitive damages against Iran *only* in a case with scores of other defendants.  Those orders therefore resolved the "liabilities of fewer than all the parties" in the underlying suit, rendering them non-final under Rule 54(b)'s plain text.  Fed. R. Civ. P. 54(b).  The other set of orders (Movants' so-called "second judgment") reflects an award of *compensatory* damages—but expressly reserved for future resolution the question of *punitive* damages—against Iran.  Those orders accordingly are not even final as to Iran and thus are likewise non-executable. *Id.*  Movants point to nothing showing that the remaining claims against other defendants (or punitive damages against Iran) have since been resolved.  And Movants never say the district court entered the requisite Rule 54(b) certifications to convert their interlocutory orders into enforceable final judgments.  Indeed, Movants elsewhere have contended (erroneously) that such certifications are not required for enforcement.

Rather than complying with these basic enforcement requirements, Movants have put

together a slapdash submission in the attempt to jump Plaintiffs' priority to the Bitcoin at issue. Movants' papers reflect zero independent investigation into the Bitcoin's connection to Iran. The entire premise of their intervention motion is that the Bitcoin belong to Iran "[a]s alleged in the Fritz Complaint," and thus that Movants are entitled to execute on their purportedly final judgments "[i]f th[e] allegations" in Plaintiffs' Complaint "are substantiated." MOL 2. It thus comes as no surprise that in their haste to appropriate Plaintiffs' extensive investigations, Movants blew past basic procedural requirements for enforcement.

Even if Movants' interlocutory orders were executable, their bid to intervene also should be denied for the independent reason that it is untimely and highly prejudicial to Plaintiffs. In evaluating whether litigants have sought intervention "[o]n timely motion," Fed. R. Civ. P. 24(a), courts consider the reasons for the would-be intervenors' delay and the prejudice that intervention would inflict on the original parties. Here, Movants have identified no reason for their delay— other than their own failures to diligently investigate the Bitcoin's connection to Iran and to monitor publicly available court filings. And the prejudice inflicted on Plaintiffs by intervention would be substantial: The asserted purpose of Movants' bid to intervene is to interfere with the priority of Plaintiffs' attachment, given Movants' status as "competing creditors." MOL 1.

In light of these problems, the Court should deny Movants' request. If the Court grants Movants' request, at minimum it should ensure that competing claims against the Bitcoin are handled in an orderly manner to protect Plaintiffs' priority as the first claimants to properly assert their interests in Iran's assets.

## **BACKGROUND**

Plaintiffs instituted this action on December 26, 2025. Dkt. 1. Pursuant to TRIA and Sections 5225(b) and 5227 of the CPLR, they seek turnover, attachment, and execution of the

blocked Bitcoin of an Iranian agency or instrumentality, the Iran and China Investment Development Group ("Iran-China Group"), which did business on the blockchain as LuBian.com. Dkt. 1.  Plaintiffs hold over $9 billion of final, unappealable, compensatory judgments against Iran for its decades-long sponsorship of brutal terrorist attacks around the world, which resulted in the callous murders of U.S. servicemen in Iraq and Lebanon, bombings targeting American civil servants in Africa, and a senseless attack on a Jerusalem restaurant.  *Id.* ¶ 7.

Alongside their turnover complaint, Plaintiffs moved for an emergency ex parte writ of attachment to protect their interests in the Bitcoin, pending the resolution of their complaint.  *See* Dkt. 69.  On December 29, 2025, Plaintiffs also timely filed verified claims in the United States' related forfeiture action in this Court concerning the same Bitcoin.  *See* Dkts. 29–30, *United States of America v. Approximately 127,271 Bitcoin ("BTC") Previously Stored at the Virtual Currency Addresses Listed in Attachment A, And All Proceeds Traceable Thereto* ("*Forfeiture Case*"), No. 1:25-cv-05745-RPK (E.D.N.Y. Oct. 14, 2025).

Plaintiffs' suit did not emerge from a vacuum.  In August 2025, it was publicly reported that the largest crypto heist in history occurred in 2020 when a hacker quietly drained over 127,000 Bitcoin from LuBian, which had long publicly proclaimed that it was mining in Iran.  *See Arkham Uncovers $3.5B Heist - The Largest Ever*, Arkham (Aug. 2, 2025), https://tinyurl.com/4msrnwcf; *see also* Dkt. 72-24.  When the government publicly filed its forfeiture action in October 2025, Plaintiffs had already been investigating the LuBian hack for months and building their case that LuBian was in fact the Iran-China Group, an agency or instrumentality of Iran.

Plaintiffs' efforts to develop and substantiate the connection between the subject Bitcoin and Iran were time- and resource-intensive—Plaintiffs' counsel and experts spent months and thousands of hours engaged in factual and legal research to understand the Iranian origins of the

Bitcoin—but their analysis was based primarily on publicly available information.  Plaintiffs engaged multiple digital-asset forensics firms to trace the Bitcoin to Iran, culminating in a 78-page declaration by Plaintiffs' digital-forensics expert attaching a mountain of supporting evidence.  *See* Dkt. 72.  These experts relied on open-source information, including public satellite imagery, public information about the Bitcoin blockchain as of 2020, historical information about the Bitcoin blockchain's hashrate, and publicly available social-media posts of the Iran-China Group.  Plaintiffs also retained a separate expert to explore Iran's regulatory and political pursuit of cryptocurrency, which was motivated principally by Iran's desire to circumvent U.S. sanctions.  That expert considered Iran's public cryptocurrency regulations and executive orders alongside public reporting, and her analysis culminated in another lengthy expert declaration substantiating Plaintiffs' claims.  *See* Dkt. 73.

In the weeks after Plaintiffs filed their complaint, copycat complainants began to proliferate on various court dockets.  *See* Dkt. 85 (discussing these claims).  Their papers assert competing interests in the Bitcoin by simply incorporating—often explicitly—the allegations and evidence from Plaintiffs' submissions.  *See Forfeiture Case* Dkts. 52, 56-1, 68, 69, 73-1, 86.  By Plaintiffs' count, at least seventeen groups of copycat claimants representing thousands of persons have now emerged—all seeking to displace Plaintiffs' priority to the Bitcoin without having performed independent or timely investigations into Iran's connection to those assets.

 Movants here previewed their copycat arguments when they filed an untimely claim to the Bitcoin in the United States' parallel forfeiture action on January 23, 2026, *see* Dkt. 106, *Forfeiture Case*, nearly a month after Plaintiffs filed their complaint, and long after the Court-imposed deadline in the forfeiture action for the assertion of claims, *see* Dec. 11, 2025 Min. Order, *Forfeiture Case*.  Two weeks after filing their untimely forfeiture claim, Movants then served on

Plaintiffs their motion to intervene as of right on February 6, 2026. *See* Dkt. 93; MOL 2. Movants' short supporting memorandum admits that their sole basis for believing the Bitcoin are Iranian assets is "the Fritz Complaint," and that Movants' own arguments hinge on whether Plaintiffs' "allegations are substantiated"—presumably by Plaintiffs and their experts. MOL 2. Movants admit that they were not even aware of the government's publicly filed forfeiture action until January 16—three months after it was instituted—and that they delayed another two weeks thereafter before seeking intervention in this case. *Id.* at 3. Movants claim that despite their unexplained delay, they are entitled to file a complaint in intervention seeking "execution under the Terrorism Risk Insurance Act" on the subject Bitcoin to enforce their purportedly "final judgments" against Iran. *Id.* at 2.

## LEGAL STANDARD

To secure intervention of right, a movant must "clai[m] an interest relating to the property or transaction that is the subject of the action," and must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The movant's claimed interest must "be direct, substantial, and legally protectable," and may not be "contingent upon the occurrence of a [subsequent] sequence of events." *Wash. Elec. Co-Op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).

A movant also must demonstrate this interest "on timely motion." Fed. R. Civ. P. 24(a)(2). In assessing timeliness, courts consider several factors, including "prejudice" to the original parties and the date by which "the applicant knew *or should have known* of [its] interest." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (emphasis added). That inquiry is not merely subjective; otherwise, "a putative intervenor could always claim it did not

know it needed to intervene until the eve of its motion." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001).

**ARGUMENT**

Movants' intervention request should be denied for two key reasons. *First*, Movants have failed to establish that they hold executable, final judgments—dispelling any purported "interest" to intervene for the purposes of executing on the Bitcoin under TRIA. *Second*, Movants' bid to intervene is untimely and would be highly prejudicial to Plaintiffs.

## I.    Movants Have Failed To Establish The Substantial, Legally Protectable, Non-Contingent Interest That Rule 24(a)(2) Requires

Movants' bid for intervention stumbles out of the gate because of their failure to substantiate the "interest" required under Rule 24(a)(2). Movants claim that they have "rights in the subject property" under "the Terrorism Risk Insurance Act of 2002," which Movants say permits them to "execut[e]" on the Bitcoin. MOL 1–2. But execution under TRIA requires *final* judgments—which Movants lack.

That finality requirement flows straight from TRIA's text. It explains that where a party holds "a judgment against a terrorist party . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment." TRIA § 201(a), codified at 28 U.S.C. § 1610 note. These references to "execution" and "attachment in aid of execution" make clear that "such judgment" at issue must be *final*. Indeed, because execution requires a final judgment, an "execution order . . . is invalid in the absence of an underlying final judgment." *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 (2d Cir. 1976); *accord Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264, 271–72 (2d Cir. 2003) (explaining that

6

plaintiffs could not execute "before [they] had obtained a final judgment," and that TRIA "confers no entitlement on victims who have not yet obtained judgments").

In assessing whether judgments are final (and thus executable), courts look to Federal Rule of Civil Procedure 54. *See Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 160 F.4th 38, 43 (2d Cir. 2025). Rule 54(b) explains that:

> when an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added). In other words, where an action involves multiple claims for relief (or claims against multiple defendants), an order resolving fewer than all of those claims is not final *unless* the district court expressly certifies "that there is no just reason for delay." *Id.* The Second Circuit has emphasized that "strict adherence to the certification requirements of Rule 54(b)" is required and has thus refused to treat orders resolving fewer than all claims as "final" in the absence of that certification. *Int'l Controls Corp.*, 535 F.2d at 747, 749; *accord Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 129 (2d Cir. 2000) ("There having been no Rule 54(b) certification here, the order from which CAI has appealed is not a final judgment.").

Movants' papers fail to establish compliance with these basic requirements. Movants say they hold "two judgments against Iran" which purportedly are "final." MOL 1–2. Movants further say that the "first judgment" is represented by two docket entries in the 9/11 litigation (Dkt. Nos. 3226 and 3229), Breitweiser Decl. ¶ 2, and that the "second judgment" is represented by three other entries on the same docket (Dkt. Nos. 3371-3, 4011, and 5376), *id.* ¶ 3. Yet all of those documents merely reflect interlocutory orders, and none contains a Rule 54(b) certification.

The two documents making up the first so-called "judgment" reflect that the Movants who participated in *Ashton v. al Qaeda Islamic Army*, 02-cv-6977 (S.D.N.Y.) were awarded compensatory damages and punitive damages against only Iran in 2016. *See* Dkt. Nos. 3226 & 3229, *In re Terrorist Attacks on September 11, 2001* ("9/11 MDL"), 03-md-1570 (S.D.N.Y.). Yet the operative complaint in *Ashton* reflects that the plaintiffs there sued over 100 other defendants. *See* Dkt. No. 465, *Ashton v. al Qaeda Islamic Army*, 02-cv-6977 (S.D.N.Y. Sept. 30, 2005). Movants cite no other documents establishing that judgment has been entered as to all of these other defendants. The orders Movants have supplied thus establish merely that their claims were resolved against one "but fewer than all" parties—making them interlocutory under Rule 54(b)'s plain text. Fed. R. Civ. P. 54(b). And nowhere does either order contain a Rule 54(b) certification issuing final judgment as to Iran and disclaiming any "just reason for delay." *Id.*

Similarly, the three orders making up the second "judgment" for a different subset of Movants resolve only those Movants' requested *compensatory* damages against Iran, but each leaves the resolution of *punitive* damages against Iran for "future" and "later" applications. *See* Dkt. Nos. 3371-3, 4011, 5376, *9/11 MDL*. Thus, these orders do not even resolve all of Movants' claims against Iran itself—rendering them plainly non-final under Rule 54(b). *Accord Linde v. Arab Bank, PLC*, 882 F.3d 314, 323 (2d Cir. 2018) (order is not final without "'fix[ing] the damages'" owed). And Movants cite no Rule 54(b) certification governing these orders either.

Movants themselves do not dispute these points. When counsel for other litigants raised these issues in the 9/11 litigation, Movants contended that they do "not need" Rule 54(b) certification to pursue "enforcement activity." Dkt. 193, *Maher v. Islamic Republic of Iran*, 20-cv-266 (S.D.N.Y. Feb. 6, 2026). But that assertion finds no basis in TRIA, which requires a final

judgment, or Second Circuit precedent, which requires "strict adherence to the certification requirements of Rule 54(b)," *Int'l Controls Corp.*, 535 F.2d at 747.[1]

Because none of Movants' "judgments" is presently executable, Movants lack a "direct, substantial, and legally protectable" interest in executing on the Bitcoin—defeating their bid for intervention as of right. *Wash. Elec. Co-Op., Inc.*, 922 F.2d at 97.[2]

## II.    Movants' Bid To Intervene Is Untimely And Would Significantly Prejudice Plaintiffs

Movants also cannot satisfy the threshold requirement of timeliness under Rule 24(a)(2). A proposed intervenor must move "on timely motion," and "[i]f it is untimely, [intervention] must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197–98 (2d Cir. 2000) (untimeliness "suffices for denial"). Timeliness is assessed under the totality of the circumstances and turns on four factors: (1) how long the movant knew or should have known of its interest before moving; (2) prejudice to existing parties from the delay; (3) prejudice to the movant if denied; and (4) any unusual circumstances. *MasterCard*, 471 F.3d at 390. Each factor cuts against Movants.

---

[1] While Movants' memorandum of law argues entirely under TRIA, CPLR 5225(b) and 5227, referenced in the second count of Movants' proposed complaint in intervention, also do not support intervention. "Article 52 permits parties to commence turnover proceedings to *enforce* money judgments," *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 98 (2d Cir. 2022) (emphasis added), and enforcement attempts are "valid" "[o]nly if the underlying judgments … are final," *Int'l Controls Corp.*, 535 F.2d at 745.

[2] Movants' "judgments" also appear to be unenforceable for a distinct reason: failure to comply with Section 1608(e) of the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1608(e). Section 1608(e) requires that copies of "any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section." *Id.* Compliance with Section 1608(e) is a prerequisite to enforcement. *See, e.g.*, *Byrd v. Republic of Honduras*, 613 F. App'x 31, 33, 35 (2d Cir. 2015) (affirming vacatur of execution order where "plaintiffs failed to comply with the notice requirements of 28 U.S.C. § 1608(e)" (capitalization altered)). Movants elsewhere have claimed that they sent Dkt. Nos. 3226, 4011, and 5376 to Iran. *See* Dkt. Nos. 195 & 196, *Maher v. Islamic Republic of Iran*, No. 20-cv-266 (S.D.N.Y. Feb. 9, 2026); Dkt. No. 114, *Dickey v. Islamic Republic of Iran*, No. 18-cv-11417 (S.D.N.Y. Feb. 9, 2026). But these filings omit mention of having sent Dkt. No. 3229 (a component of Movants' purported "first judgment," Breitweiser Decl. ¶ 2), and Dkt. No. 3371-3 (a component of Movants' purported "second judgment," Breitweiser Decl. ¶ 3).

### a. Movants "Knew Or Should Have Known" Of Their Purported Interests Months Before This Motion

The first factor—when Movants "knew or should have known" of their purported interest—dooms the motion. The inquiry is objective: "Delay is not measured solely subjectively because, if that were the test, a putative intervenor could always claim it did not know it needed to intervene until the eve of its motion." *Butler*, 250 F.3d at 182. Where filings are public, courts reject intervention motions premised on claimed belated awareness. *See MasterCard*, 471 F.3d at 390 (holding intervention untimely in part because "complaint and other filings . . . are publicly available for anyone to access"); *NAACP*, 413 U.S. at 366–67 (affirming finding that applicants "knew or should have known" based on public reporting and surrounding circumstances).

Here, Movants hold interlocutory orders entered against Iran in 2016 and 2018. Intervenor Compl. ¶¶ 14–15. Since then, there has been ample public reporting about Iran's use of cryptocurrency to evade sanctions and its collaboration with Chinese miners. Dkt. 1 ¶¶ 2–3; *see NAACP*, 413 U.S. at 366–67 (explaining that appellants knew or should have known of the pendency of the action in light of public reporting and public comment); *Levin v. United States*, 633 F. App'x 69, 71 (2d Cir. 2016) (affirming denial of intervention as untimely where there was "significant media attention"). Movants had every incentive to monitor and investigate potentially attachable Iranian digital assets. Yet they did nothing when it was publicly reported that over 127,000 Bitcoin had been stolen from LuBian—an entity self-proclaimed to be mining in Iran—in August 2025. The government's forfeiture case, which itself acknowledges that at least some of the Bitcoin was mined in Iran, Dkt. 1 at 7, 27 n.9, *Forfeiture Case*, further thrust these Bitcoin into public light in October 2025. Pursuant to Rule G(4)(a)(iv)(C), the government published notice of the forfeiture action on its official forfeiture website, advising that the deadline to file claims for potential claimants who did not receive direct notice is 60 days from the first day of

10

publication (October 16, 2025), *i.e.* December 15, 2025.  And the Court subsequently extended that deadline to December 29, 2025.  Dec. 11, 2025 Min. Order, *Forfeiture Case*.  Nonetheless, Movants waited roughly six months after the public reporting on the LuBian heist, four months after the forfeiture case was filed, and a month and a half after Plaintiffs filed their own complaint seeking the Bitcoin to attempt intervention.  *See* Dkt. 1; *id.* ¶ 11; *Forfeiture Case*, Dkt. 29-1; *see also Andrews v. Sony/ATV Music Publ'g, LLC*, 2017 WL 770614, at *9 (S.D.N.Y. Feb. 24, 2017) (intervention untimely after waiting about four months).

Movants contend that they only learned about the forfeiture case and this action through a January 16, 2026, filing in the 9/11 litigation and therefore moved promptly.  MOL 4; Breitweiser Decl. ¶ 9.  But the Second Circuit has foreclosed measuring delay "solely subjectively," *Butler*, 250 F.3d at 182, and a proposed intervenor's inability to explain why it could not have known about its potential claim "from the outset" weighs against timeliness, *Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 2020 WL 5350271, at *19 (S.D.N.Y. Sept. 4, 2020).  Courts thus have rejected the identical excuse that the movant "did not have knowledge of this dispute until [p]laintiffs informed" it.  *Andrews*, 2017 WL 770614, at *10; *see also Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988) (denying intervention where appellants "should certainly have been aware" that another party's interests were not coterminous with their own).  Ignoring the extensive public reporting of the LuBian heist and the government's public forfeiture case, Movants "sat back and watched the litigation unfold," while Plaintiffs investigated and *timely* filed a 40-page complaint, two expert reports, and more than 300 pages of exhibits.  *In re Chalasani*, 92 F.3d 1300, 1313 (2d Cir. 1996).  Their strategic delay should not be rewarded.  *See id.*

11

### b. Movants' Delay Prejudices Plaintiffs

The second timeliness factor—prejudice to existing parties—also compels denial. Courts have emphasized that "whether the delay has prejudiced any of the existing parties" is often "'the most significant criterion in determining timeliness,'" *U.S. ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fid. Ins. Co.*, 2019 WL 4126473, at *3 (S.D.N.Y. Aug. 30, 2019), and the inquiry is "driven heavily" by relative prejudice, *Authors Guild v. Google, Inc.*, 2009 WL 3617732, at *2–3 (S.D.N.Y. Nov. 4, 2009).

Here, Movants are blatant about their intent to prejudice Plaintiffs by "competing for the same assets." MOL 4. Because the Court has not yet ruled on Plaintiffs' emergency ex parte attachment motion, Plaintiffs' interest and priority in the Bitcoin remains unprotected. Movants' efforts to stand on equal footing with Plaintiffs—or even to jump the line—necessarily would prejudice Plaintiffs, who spent months investigating the Bitcoin, retaining experts, and developing the evidentiary record linking the Bitcoin to Iran, and then requested attachment a month and half before Movants made their derivative, copycat claim. It is entirely appropriate to deny intervention in this scenario. *See In re 650 Fifth Ave. & Related Props.*, 2015 WL 13700951, at *2 (S.D.N.Y. Mar. 12, 2015), *aff'd sub nom. Levin v. United States*, 633 F. App'x 69 (2d Cir. 2016) (denying intervention that could raise issues regarding priority of claims and "undermine plaintiffs' extensive efforts . . . including significant discovery"). Equity does not favor allowing a late-arriving creditor to leverage Plaintiffs' efforts to leapfrog or dilute Plaintiffs' priority.

Movants concede their asserted interest arises entirely from Plaintiffs' Complaint and depends on "substantiat[ion]" of Plaintiffs' "allegations." MOL 2. Movants do not offer any additional evidence or allegations, independent tracing, forensic work, or investigation. Far from clarifying the issues, they seek to capture priority based on Plaintiffs' labor. Courts foreclose such

opportunism that attempts "to take advantage unfairly of money and effort expended by others."
*Nat'l Union Fire Ins. Co. of Pittsburgh v. Sun*, 1994 WL 463009, at *6 (S.D.N.Y. Aug. 25, 1994).

Movants cannot minimize the prejudice by suggesting that the case is still at an early stage.
Putting aside that attachment and turnover proceedings are intended to be resolved quickly, even
where a case remains at the pleadings stage and no scheduling order would be disturbed,
intervention may still be prejudicial.  *See Mitchell v. Lyons Pro. Servs., Inc.*, 109 F. Supp. 3d 555,
563 (E.D.N.Y. 2015) (noting that CPLR 5225 and 5227 describe special proceedings whose
hallmarks are "'[s]peed, economy and efficiency'"), *aff'd sub nom. Mitchell v. Garrison Protective
Servs., Inc.,* 819 F.3d 636 (2d Cir. 2016); *Baliga*, 2020 WL 5350271, at *21.  Plaintiffs have
developed an extensive evidentiary record supporting their attachment, and the government's
invited response to their attachment motion is due in a matter of days (after weeks of multiple
extensions).  It would be "a mischaracterization" to suggest proceedings "have not advanced."
*Baliga*, 2020 WL 5350271, at *21.

### c.   Movants Will Not Be Prejudiced By Denial of Intervention

The third factor—prejudice to Movants if denied—also favors Plaintiffs.  *First*, denial does
not prejudice Movants because they have not shown a direct, substantial, and legally protectable
interest warranting intervention in this action—they do not yet have final judgments to enforce.
*Supra* Part I.  *Second*, if they are able to obtain final judgments, Movants "remain free to file a
separate action."  *In re Holocaust Victim Assets Litig.*, 225 F.3d at 199.  And *third*, Movant has
not shown that these Bitcoin are the only assets available to satisfy their judgments.  *Republic of
Philippines v. Christie's*, 2000 WL 1056300, at *4 (S.D.N.Y. Aug. 1, 2000) (denying intervention
as untimely when "petitioner has not argued that it could not satisfy its judgment by collecting on
other assets . . . if it is barred from intervening in this action").

This remains true in the TRIA enforcement context.  In *Levin*, the Second Circuit affirmed the denial of intervention and held that proposed TRIA intervenors were not significantly prejudiced where they made no showing that no other assets could be collected to satisfy their judgment.  *Levin*, 633 F. App'x at 71.  That conclusion applies here.  Movants' supposed late awareness of the Iranian nature of the Bitcoin—which stems from their failure to conduct their own due diligence in searching for Iranian cryptocurrency—coupled with their desire for intervention do not themselves establish prejudice.

### d. Unusual Circumstances Warrant Denial of Intervention

Movants "do not suggest the presence of any unusual circumstance that would support their claim of timeliness."  *U.S. Equal Emp. Opportunity Comm'n v. Birchez Assocs., LLC*, 2021 WL 1115513, at *3 (N.D.N.Y. Mar. 24, 2021); *see also Peterson v. Islamic Republic of Iran*, 2018 WL 3019878, at *9 (S.D.N.Y. June 18, 2018) (no unusual circumstance given proposed intervenor's "lack of attention to the[] proceedings").

Rather, the developments leading to this case have attracted significant attention, and this case itself has resulted in scores of copycat filings already, creating unusual circumstances that count against Movants and underscore why timeliness matters.  Movants' approach—waiting for Plaintiffs to engage in the tremendous expense and difficult work of identifying and tracing Iranian cryptocurrency before seeking to piggyback onto their efforts by requesting intervention—invites a wave of additional copycat interventions by thousands of other Iran judgment creditors who likewise slept on their rights.  Even if Plaintiffs' priority were protected—and at present, it is not— such approach compounds prejudice to Plaintiffs by multiplying competing claims and further delaying resolution and any distribution to Plaintiffs who invested extensive time and resources in bringing this action. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) ("policy

14

that favors rapid settlement and implementation of . . . remedies" provided unusual circumstances militating against intervention).

### III.    If Intervention Is Granted, The Court Should Adopt A Structured, Priority-Preserving Framework

If the Court grants Movants' motion—or any future motions to intervene—it should do so only within a structured framework that provides Plaintiffs' first-in-time priority while permitting orderly participation by follow-on judgment creditors.  New York law "favor[s] a diligent creditor over creditors that are less diligent."  *In re Liquidation of Jugobanka, A.D.*, 995 N.Y.S.2d 906, 909 (N.Y. Sup. 2014).  And New York law follows a first-in-time, first-in-right approach under which the creditor who first obtains an order of attachment and delivers it to a law enforcement officer for service has priority over subsequent creditors.  *See* CPLR 6226.  Here, but for the Court's request to hear from the government, and the government's repeated extensions of the time to respond, Plaintiffs' emergency ex parte attachment request would have been adjudicated, and Plaintiffs could have secured their priority before Movants ever sought intervention.  *See* Dec. 31, 2025 Min. Order; Feb. 2, 2026 Min. Order; Dkts. 81, 90.

In light of Plaintiffs' extensive investigation, evidentiary development, and prompt and timely filings, adjudication of which has been greatly delayed by the government, Plaintiffs respectfully request that the Court preserve their priority as to Movants and any other copycat claimants.  The Court has already taken notice of Plaintiffs' "diligen[t] [actions] to secure their rights to the Subject Bitcoin," Dec. 31, 2025 Min. Order, and recognized that it "may exercise its docket-management authority to equitably consolidate any requests for writs of attachment, so that all such claims can be adjudicated in an orderly fashion," Feb. 2, 2026 Min. Order.  Exercising that authority here, the Court can and respectfully should expressly provide that priority among

Plaintiffs and any other intervenors or copycat claimants should be determined by the date on which a creditor files a motion for a writ of attachment that is ultimately granted.

A priority rule tied to the filing date of a successful writ motion avoids "allowing creditors who moved later in time from receiving a windfall based on [Plaintiffs'] efforts." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2023 WL 4826467, at *12 (D. Del. July 27, 2023). In *Crystallex*, Judge Leonard Stark, sitting by designation in the District of Delaware, adopted the same sequential framework, explaining that this approach "rewards creditors who acted diligently," ensures that those who are "first in time" stand "first in line," and avoids rewarding non-meritorious filings. *Id.* Any intervention should not impair Plaintiffs' first-in-time rights or priority to the Bitcoin, and Movants themselves profess willingness "to participate in an orderly and coordinated adjudication." Breitweiser Decl. ¶ 13.

Thus, if intervention is granted, the Court should provide that priority among Plaintiffs and any intervenors should be determined by the date on which a creditor files a motion for a writ of attachment that is ultimately granted.

## CONCLUSION

The motion for intervention should be denied. But at minimum, the Court should provide that priority among Plaintiffs and any intervenors should be determined by the date on which a creditor files a motion for a writ of attachment that is granted.

16

Dated: February 20, 2026         GIBSON, DUNN & CRUTCHER LLP
       New York, New York

By:    */s/ Robert L. Weigel*
       Robert L. Weigel
       Jason W. Myatt
       200 Park Avenue
       New York, NY 10166
       Tel.: 212-351-4000
       rweigel@gibsondunn.com
       jmyatt@gibsondunn.com

       Jessica L. Wagner (*pro hac vice*)
       1700 M Street, N.W.
       Washington, D.C. 20036
       Tel: 202-955-8500
       jwagner@gibsondunn.com

       *Attorneys for Plaintiffs*

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Memorandum of Law complies with the formatting and length requirements set forth in this Court's Practices and Rules.   The Memorandum contains 16 pages, excluding the cover page, table of contents, table of authorities, and signature block.   The typeface, margins, and spacing comply with the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's Practices and Rules.

Dated: February 20, 2026                    */s/  Robert L. Weigel*
      New York, New York                    Robert L. Weigel