**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOALA FRITZ, et al.,<br>Plaintiffs,<br>v.<br>IRAN AND CHINA INVESTMENT DEVELOPMENT GROUP d/b/a LUBIAN.COM,<br>Defendant. | Civil Action No. 1:25-cv-07093 |

**SUPPLEMENTAL DECLARATION OF AVIGDOR SASON COHEN**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER OF ATTACHMENT**

I, Avigdor Sason Cohen, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a French citizen residing in Paris, France, and a Lead Investigator at Decuver Ltd., a firm specializing in blockchain and cryptocurrency investigations, financial forensics, digital asset tracing, and open-source intelligence ("OSINT") analysis—that is, intelligence analysis using publicly and commercially available tools.

2. I have extensive professional experience in blockchain forensics, cryptocurrency mining infrastructure analysis, sanctions-related digital asset investigations, and multi-jurisdictional asset-tracing engagements. My work includes the reconstruction of large-scale on-chain financial flows, attribution of mining operations to specific physical infrastructure, and the technical and economic analysis of cryptocurrency systems for litigation and regulatory matters.

3. I have a master's degree in cybersecurity from the Ecole Supérieure d'Ingénieurs Léonard de Vinci Graduate School of Engineering in Paris and a bachelor's degree in physics engineering from the Science University of La Doua. I have submitted two expert reports on

blockchain forensics in judicial proceedings, one filed in a U.K. court and one in U.S. federal court, in addition to a prior declaration in this case. My curriculum vitae is available at Dkt. 72-1.

## INTRODUCTION

4. I have been asked to provide a supplemental opinion regarding the ownership, dominion, and control by LuBian, the Bitcoin mining pool of the Iran-China Investment Development Group, of approximately 127,000 Bitcoin. My original opinion is incorporated as though fully set forth herein. Dkt. 72 ("First Cohen Decl.").

5. Through blockchain tracing and third-party analytics, I have attributed a pool-level reserve of roughly 127,000 BTC to LuBian. *See* First Cohen Decl. pp. 39–51. This cryptocurrency is currently the subject of civil-forfeiture proceedings initiated by the United States. *See generally* Complaint ("Forfeiture Complaint"), *United States v. Approximately 127,271 Bitcoin*, No. 1:25-cv-05745 (E.D.N.Y. Oct. 14, 2025), ECF No. 1. This declaration discusses additional evidence and provides further analysis linking this Bitcoin (the "Defendant Cryptocurrency") to LuBian, including by detailed examination of the grouping of cryptocurrency "Clusters" identified in the Forfeiture Complaint filed by the United States.

6. In preparing this report, I relied on OSINT materials, including:

a. Identification of LuBian-mined blocks via "lubian.com" tags in crypto exchange transactions and public pool data;

b. Clustering and tracing of LuBian-mined rewards from crypto exchange outputs into payout, aggregation, and treasury wallets, and onward into the hacker-controlled addresses that drained approximately 127,000 BTC from the LuBian-controlled wallets in December 2020;

c. Balance and flow analysis of LuBian-controlled wallets to quantify the approximately 127,000 BTC reserve and the approximately 11,000 BTC directly traceable to LuBian-mined crypto exchange rewards, and to assess whether those coins were retained or routinely sent to exchanges or other services.

7. I also reviewed the complaint filed by the United States in the forfeiture action against the Bitcoin. Attached as **Exhibit 1** is a true and correct copy of the chart included in the government's Forfeiture Complaint that arranges the addresses containing the Defendant Cryptocurrency into thirteen "Clusters."

## DEFINITIONS

8. "Blockchain" means a distributed ledger comprised of a sequential chain of transactions ("blocks"), like the Bitcoin network. In a blockchain transaction on the Bitcoin network, the network confirms a proposed transactor's authority and the transaction's validity.

9. "On-chain" means on the blockchain.

10. "Private key" means the alphanumeric string corresponding to a particular Bitcoin public address. Every private key has one corresponding public address.

11. "Public address" means the alphanumeric string corresponding to a particular Bitcoin private key. The public address can be freely shared and is the address where, for example, an individual would receive payment for goods. Every public address has one corresponding private key. It is essentially impossible with current (known) computing technology to determine the private key from a public key.

12. "Seed phrase" means a collection of 12 to 24 common words that when combined corresponds to a discrete wallet of private keys and their associated public keys. That is, with only

the single seed phrase, a user can generate and exercise control over an "unlimited" number of private keys and their associated public addresses. A particular seed phrase is mathematically linked to the specific Bitcoin addresses it unlocks—one cannot change the seed phrase and maintain access to the same Bitcoin addresses. Conversely, loss of a seed phrase constitutes a loss (or theft, or hack) of every Bitcoin private key (and the associated Bitcoin stored in the public addresses matching those private keys) tied to that seed phrase.[1] It is essentially impossible with current (known) computing technology to determine the seed phrase corresponding to any particular set of private keys (and thus, public addresses). The terms "private key" and "seed phrase" are often used interchangeably; for purposes of this Declaration, they are not.

13. "Wallet" means any number of private keys and associated public addresses tied to a particular seed phrase. The terms "wallet" and "address" are often used interchangeably; for purposes of this Declaration, they are not.

**EXECUTIVE SUMMARY OF OPINIONS**

14. LuBian-stamped Bitcoin was mined into what the government terms "Cluster 4." By using OSINT tools to review transactions immutably recorded on the blockchain, I looked for commonalities between the addresses in the government's "Cluster 4" and other Clusters identified in the Forfeiture Complaint, including similar patterns or common transactions, that could indicate common ownership and control. After careful review, I determined that the blockchain transactional record supports common operational control across the primary LuBian mining

---

[1] "A seed phrase is simply the mnemonic that allows you to restore all of the accounts in your crypto wallet . . . anyone with access to your seed phrase has access to your entire wallet." *Understanding BIP-39: The Origin of Your Seed Phrase*, Ledger Academy (May 12, 2025), https://www.ledger.com/academy/bip-39-the-low-key-guardian-of-your-crypto-freedom.

address and related addresses (Cluster 4) and all other Clusters (Clusters 1–3 and 5–13) identified in the Forfeiture Complaint.

15. A number of distinct behavioral indicators support this conclusion: (i) coordinated provisioning (creation or first use) of addresses across Clusters; (ii) similar vulnerabilities among all addresses leading to the hack; (iii) unified incident response; (iv) post-incident mining reward routing; (v) subsequent residual balance consolidation; (vi) identical, LuBian-identified messages broadcast by each address; and (vii) consolidated, long-term custody. I outline each in turn below.

16. Taken together, these behaviors strongly indicate that a single person or entity controlled all addresses in the Clusters and owned all of the Defendant Cryptocurrency. That operator also maintained continuous operational control, rather than transferring control to an independent third party. As a result, it is my opinion that LuBian owned all of the Defendant Cryptocurrency up to the December 2020 hack, contrary to the allegations in the government's Forfeiture Complaint.

**LuBian's Control of Cluster 4**

17. As more fully described in Part I.A, LuBian directed its newly mined cryptocurrency—known as blockchain rewards—many of which were stamped with LuBian's name, automatically to an address in Cluster 4. To send its mining output to Cluster 4, it is highly likely that LuBian had control of this address in Cluster 4.

**Coordinated Creation of Addresses Supports Unified Control**

18. As more fully described in Part I.B, addresses attributed to multiple Clusters exhibit tightly coordinated "first activity" patterns: Initial funding transactions occur on the same day, often at the same time or within narrow time windows, and in key instances are sourced from the same funding address. This is consistent with a single operator setting up multiple address sets in

parallel for different operational roles related to a sophisticated Bitcoin mining venture (*e.g.*, receipt addresses, treasury storage, operational buffers, contingency addresses). In other words, these addresses exhibit characteristics consistent with the same entity first using them, in a series of coordinated initialization events characteristic of a unified system deployed under centralized administration.

**The Nature of the Vulnerability Leading to the Hack Suggests Common, Flawed Address Provisioning**

19. As more fully described in Part I.C, it is likely that the addresses were hacked due to a flaw in the method the seed phrase was generated. Simply put, the seed phrase likely was generated with insufficient randomness to appropriately guard against "brute-force" or computerized guessing attempts. And the Clusters were drained during the same compromise event; that is, the same vulnerability was likely present across all addresses in each Cluster, suggesting use of a shared, flawed seed-phrase algorithm, and thus, common ownership and control.

**Convergence on a Single Recovery Destination Supports Unified Control**

20. As more fully described in Part I.D, during the hack, the remaining balances of addresses from multiple Clusters were routed to the same recovery destination address, with closely coordinated timing across separate sending addresses. Convergence in a single consolidation address is highly consistent with a single operator executing an emergency treasury consolidation across addresses under common control, selecting a safe-custody endpoint, prioritizing at-risk balances, and coordinating transactions within a narrow operational window, all in an effort to mitigate further losses in compromised addresses.

**Direct Coinbase Rewards Paid to the Recovery Destination Link Mining Operations to the Recovery Treasury**

21. As more fully described in Part I.E, after mining resumed following the December 2020 hack, LuBian-stamped direct coinbase rewards—*i.e.*, newly mined cryptocurrency—were paid to the same recovery address where cryptocurrency was diverted during the 2020 hack.[2] Accordingly, coinbase rewards appearing at the recovery destination are consistent with the same operator, namely, LuBian, controlling the recovery treasury and the mining payout destination.

**Later Sweeping of Residual Balances Reinforces Continuing Centralized Control Across Clusters Comprising 99.8% of the Defendant Cryptocurrency**

22. As more fully described in Part I.F, months after the hack incident, residual balances from multiple Clusters were "swept," or moved, in coordinated phases into another centralized custody destination with multiple transfers occurring within narrow time windows. This is consistent with systematic post-incident housekeeping by a single operator, clearing remaining balances from distributed operational addresses and consolidating them into centralized custody as part of ongoing treasury management.

**Identical Recovery Message Broadcasts Reflect Unified Incident Response**

23. As more fully described in Part I.G, and in my first declaration, in the months following the hack every address listed in the government's Forfeiture Complaint broadcast messages, identified as originating from LuBian, in an effort to convince the hacker to return the stolen funds. This conclusively links all of the addresses in the government's Clusters to LuBian.

**Sustained, Consolidated Custody is Consistent with a Unified Treasury, not Distributed Ownership**

24. As more fully described in Part I.H, recovered funds remained commingled and consolidated through a small number of successor custody addresses over an extended period,

[2] The term "coinbase" is a technical term not related to the popular exchange, Coinbase.com.

rather than being divided and distributed in a manner consistent with separate owners managing independent addresses. The custody pattern reflects centralized treasury behavior: Large, structured migrations between successor holding addresses, maintaining consolidation as the dominant feature of custody.

## OPINION

### I. All of the Defendant Cryptocurrency Was Owned and Controlled by LuBian Immediately Before the December 28, 2020 Hack.

25. It is my opinion that LuBian controlled Cluster 4 and owned the Defendant Cryptocurrency it contained. Approximately 11,115 of LuBian's newly-mined Bitcoin were deposited in one of the addresses in Cluster 4. That represents nearly all of the Bitcoin mined by LuBian before the December 2020 hack, indicating LuBian's control and ownership of that address. The other addresses in Cluster 4 exhibited co-spending behavior linking them to LuBian's primary mining address. Thus, as the government has acknowledged, "all four addresses in Cluster Index-4 were associated with Lubian." Forfeiture Compl. at 27 n.9.

26. It is also my opinion that *all* Clusters (and, therefore, *all* of the Defendant Cryptocurrency) were subject to common ownership and operational control. Blockchain-based evidence establishes that Clusters 1–5, 7, 9–10, and 12 were owned and controlled by the same person or entity. Specifically, these Clusters exhibit patterns consistent with a single integrated address management ecosystem managed by one large operator, involved in Bitcoin mining, across the lifecycle of activity, including (i) coordinated provisioning at inception, (ii) unified incident response during the December 2020 hack, (iii) post-hack continuity in mining reward routing and custody, (iv) long-term consolidated holding, and (v) residual assets from disparate Clusters transferred to the same recovery destination. Other blockchain evidence—namely, the nature of

vulnerabilities prior to the December 2020 hack and coordinated messaging following it—then establishes that the same person or entity also owned and controlled Clusters 6, 8, and 11.

27. Because LuBian controlled and owned Cluster 4, and the same person or entity controlled and owned all Clusters identified in the government's Forfeiture Complaint, I conclude that LuBian controlled all Clusters and owned all of the Defendant Cryptocurrency.

28. In forming these opinions, I rely on the following:

**A. LuBian's Control of Cluster 4**

29. Extensive blockchain evidence demonstrates that LuBian controlled the addresses contained in Cluster 4 and therefore owned the Defendant Cryptocurrency it contained.

30. Before the December 2020 hack, approximately 11,115 newly-mined, LuBian-stamped Bitcoin, also known as coinbase rewards, were sent directly to one of the addresses in Cluster 4—specifically, address 34Jpa4Eu3ApoPVUKNTN2WeuXVVq1jzxgPi (the "34J Address"). These Bitcoin constitute nearly all of the approximately 11,166 Bitcoin mined by LuBian before the hack. This connection between LuBian's mining hardware and the 34J Address demonstrates that LuBian controlled that address and owned the Defendant Cryptocurrency that it contained.

31. "Coinbase rewards" are not received through ordinary inbound transfers; they are minted directly to the address specified in the block's coinbase (mining) transaction when the block is constructed and mined. Selecting that destination requires control over the mining operation's reward-routing configuration (e.g., block template and/or payout settings). In other words, coinbase rewards are a special type of transaction signifying a newly mined block that identifies the entity that mined them. Thus, LuBian's newly mined Bitcoin sent directly to the 34J address were not dispersed or subjected to complex funneling mechanisms prior to their arrival; rather,

LuBian systematically mined these Bitcoin, and the Bitcoin were automatically deposited into the 34J Address without engaging in "spraying" or "funneling" behavior throughout the pre-hack period (as is suggested by the Government).

32. Attached as **Exhibit 2** is a true and correct copy of a graph from Arkham Intelligence, a blockchain analytics firm, showing transfers associated with the 34J Address. Exhibit 2 shows that there were no outflow transfers from the 34J Address from April 2020 to the day of the December 2020 hack. Rather, all of LuBian's approximately 11,115 newly mined Bitcoin that were sent to the 34J Address remained in it during that period.

33. The complete absence of outflows from the 34J Address indicates a deliberate strategy of retention and consolidation. This behavior is consistent with a static treasury securely holding newly minted assets and is inconsistent with a transient account used for money laundering, where assets are regularly transferred in and out. Typical money laundering operations often involve the rapid dispersion, "spraying," or continuous movement of funds through intermediate addresses to obscure their origin. In stark contrast, on-chain data reveals that during the entire pre-hack accumulation phase, from April to December 2020, there were zero outflow transfers from the 34J Address to which LuBian mined.

34. As the government acknowledges, the other three addresses in Cluster 4 exhibit co-spending behavior with the 34J Address. Forfeiture Compl. at 27 n.9. Therefore, all addresses in Cluster 4 were controlled by LuBian and all of the Defendant Cryptocurrency in Cluster 4 was owned by LuBian.

**B. Coordinated Provisioning at Inception (First Use)**

**i. Factual Support**

35. My review of blockchain activity reveals multiple "initialization events" in which addresses later attributed to different Clusters in the government's complaint were created[3] and first funded within the same narrow time windows by the same originating address. This indicates that a single entity created all of these addresses, unifying these Clusters under common control.

April 5, 2019 Event (Clusters 1, 3, 5)

a. On April 5, 2019, an address not included in the government's complaint, 3AhJ49Hh57bhpKdJYkhfC7K3yu9BtRmkA5 ("Funding Address 1"), created and funded five addresses contained in Clusters 1, 3, and 5. These transactions are the first transactions or on-chain activity associated with each address. They also occurred within the same, narrow timeframe. A true and correct representation of these transactions is contained in **Table 1** and **Appendix Figure 1**.

| Table 1 | | | | |
|---|---|---|---|---|
| **Date / Time** | **From** | **To** | **Cluster** | **BTC** |
| 04-05-2019 04:41:44 | Funding Address 1 | 3Pja5FPK1wFB9LkWWJai8XYL1qjbqqT9Ye | 1 | 0.20006737 |
| 04-05-2019 07:13:46 | Funding Address 1 | 3B1u4PsuFzww1P8if5jYmitXxpMs2EMSqt | 3 | 0.20012494 |
| 04-05-2019 07:13:46 | Funding Address 1 | 3JJ8b7voMPSPChHazdHkrZMqxC7Cb4vNk2 | 3 | 0.20014047 |
| 04-05-2019 07:13:46 | Funding Address 1 | 32i6n2vXhjvJg1vniURFy7A5VK6eG6oDgg | 5 | 0.20005941 |
| 04-05-2019 07:13:46 | Funding Address 1 | 33uEsaGLcF9H46Dvzx1kMnuMCQ13ndkAjV | 5 | 0.2000645 |

[3] The term "created" as used herein refers to the first transaction on an address. Mathematically, all Bitcoin addresses already exist. When a user generates a seed phrase, it grants access to pre-determined addresses. This is why it is almost impossible to "brute force" or "guess" any particular Bitcoin address—there are "essentially" infinite combinations.

April 24, 2019 Event A (Clusters 2, 4, 5, 7, 9, 10)

b. On April 24, 2019, five addresses from five different Clusters were created and funded simultaneously by address 357R3FeNmySYeHuRfyhFd6nMwzoLDdjfwV ("Funding Address 2"), which is an address that is not contained in the government's Forfeiture Complaint. One of the five addresses created and funded at this time was address 338uPVW8drux5gSemDS4gFLSGrSfAiEvpX, which is an address contained in Cluster 4.

c. On April 24, 2019, Funding Address 2 also funded an intermediary address, 32cizna4vaCgvr4cEmjco54mfmE7Dzp5yj ("Funding Address 3"), not included in the government's complaint. On September 9, 2019, that address funded the only address in Cluster 9, which is the first funding that address received. A true and correct representation of these transactions is contained in **Table 2** and **Appendix Figure 2**.

**Table 2**

| Date / Time | From | To | Cluster | BTC |
|---|---|---|---|---|
| 04-24-2019 07:24:52 | Funding Address 2 | 338uPVW8drux5gSemDS4gFLSGrSfAiEvpX | 4 | 0.01100246 |
| 04-24-2019 07:24:52 | Funding Address 2 | 3FrM1He2ZDbsSKmYpEZQNGjFTLMgCZZkaf | 2 | 0.01500003 |
| 04-24-2019 07:24:52 | Funding Address 2 | 3GaB3nRWA1PLc3XQkkbpVtFwYYZEuMxD4i | 5 | 0.01200002 |
| 04-24-2019 07:24:52 | Funding Address 2 | 3AWpzKtkHfWsiv9RGXKA3Z8951LefsUGXQ | 7 | 0.01300003 |
| 04-24-2019 07:24:52 | Funding Address 2 | 3NmHmQte2rP8pS54U3B8LPYQKkpG1pFF69 | 10 | 0.014 |
| 04-24-2019 07:24:52 | Funding Address 2 | Funding Address 3 | N/A | 0.98899753 |
| 09-08-2019 07:34:27 | Funding Address 3 | 39B6oSa58qNpFMGpuowtRHAYp3fM4ghXRq | 9 | 0.10000773 |

April 24, 2019 Event B (Clusters 4, 5, 7, 12, 13)

d. Also on April 24, 2019, various addresses in Clusters 4, 5, 7, 12, and 13 were created and funded in a series of related transactions. At exactly 6:20:34 AM, an address in Cluster 4 (3PWNGS2357TnjRX7FpewqR3e3qsWwpFrJH) and an address in Cluster 5 (3HuUiXmKN3beQSoM97kWjK1fesWWJvKvaZ) were created and immediately funded using Bitcoin from three other addresses: 32BGGG2a2yFMBnJi9TgJcWXfDTEFZsCpqj ("Funding Address 4"), 3LS98FJSQJrJHEFLMhpqr96sq3NRCt9Xy8 ("Funding Address 5"), and 3GseKPLfC8wNpeD3vuxotRU91mw8vt7cqK ("Funding Address 6"). Then, at exactly 6:31:26 AM, Funding Addresses 4–6 funded addresses in Clusters 7, 12, and 13 through a series of transactions. A true and correct representation of these transactions is contained in **Table 3** and **Appendix Figure 3**.

**Table 3**[4]

| Date / Time | From | To | Cluster | BTC |
|---|---|---|---|---|
| 04-24-2019 06:20:34 | Funding Address 4 | 3PWNGS2357TnjRX7Fpew qR3e3qsWwpFrJH | 4 | 0.0022517 |
| 04-24-2019 06:20:34 | Funding Address 4 | Transfer Address 1 | N/A | 0.0017483 |
| 04-24-2019 06:20:34 | Funding Address 5 | 3PWNGS2357TnjRX7Fpew qR3e3qsWwpFrJH | 4 | 0.0039359 |
| 04-24-2019 06:20:34 | Funding Address 5 | Transfer Address 1 | N/A | 0.0030558 |
| 04-24-2019 06:20:34 | Funding Address 6 | 3HuUiXmKN3beQSoM97k WjK1fesWWJvKvaZ | 5 | 0.0070035 |
| 04-24-2019 06:20:34 | Funding Address 6 | Transfer Address 2 | N/A | 0.4929965 |
| 04-24-2019 06:31:26 | Transfer Address 1 | 34KYo7VdVr5CJ7m4hYhH9 RpwqXhbsTrw4T | 7 | 0.0000750 |
| 04-24-2019 06:31:26 | Transfer Address 1 | Transfer Address 3 | N/A | 0.0045834 |

[4] The true addresses for the "Transfer Addresses" are contained in Appendix Figure 3.

| | | | | |
|---|---|---|---|---|
| 04-24-2019 06:31:26 | Transfer Address 2 | 34KYo7VdVr5CJ7m4hYhH9RpwqXhbsTrw4T | 7 | 0.0079304 |
| 04-24-2019 06:31:26 | Transfer Address 2 | Transfer Address 3 | N/A | 0.4848232 |
| 04-24-2019 06:31:26 | Transfer Address 3 | 339khCuymVi4FKbW9hCHkH3CQwdopXiTvA | 13 | 0.0090045 |
| 04-24-2019 06:31:26 | Transfer Address 3 | Transfer Address 4 | N/A | 0.4800741 |
| 04-24-2019 06:31:26 | Transfer Address 4 | 389JrNcn8trYgYi2EtHi4X7bTCqtVbep86 | 12 | 0.0100051 |

**ii. Significance**

36. This pattern is consistent with coordinated initialization under a single operator, involved in Bitcoin mining, rather than independent address creation by unrelated parties. The highly coordinated creation and funding of addresses in Clusters 1–5, 7, 9, 10, 12, and 13 is behavior associated with unified seed phrase control and ownership. Some of the addresses in Clusters 1, 3, and 5 were provisioned essentially simultaneously, from a common funding address. Subsequently, a few of the addresses in Clusters 2, 4, 5, 7, 9, and 10 were initialized using a common funding address (or an intermediary from that same common funder), with all but the address in Cluster 9 being simultaneous. Then, some of the addresses in Clusters 4, 5, 7, 12, and 13 were provisioned contemporaneously and through a series of linked and intermediary transactions from three funding addresses. Within each initialization event, the sharing of a common funding source (directly or via intermediary address) and contemporaneous creation and funding indicates the addresses were under ownership and control of a common person or entity. Between the events, the overlap of the creation of Cluster 5 addresses; the commonality of funding behavior (similar amounts of fractional Bitcoin sent to all addresses); and the other indicators of common ownership discussed in this declaration, lead me to conclude that the same entity was responsible for each event. In other words, based on my training and experience, the evidence suggests the same entity

exerted ownership and control of the seed phrase for the addresses from Clusters 1–5, 7, 9, 10, 12, and 13 listed in Tables 1, 2 and 3 and Appendix Figures 1, 2, and 3.

**C. Similar Vulnerabilities Exploited in the Hack**

**i. Factual Support**

37. It is essentially impossible to "brute-force" or "guess" a seed phrase or private key corresponding to any particular Bitcoin address. There are enough combinations such that, using current (known) computing power, a properly generated Bitcoin seed phrase cannot be guessed in any realistic span of time. However, if a seed phrase is generated via a flawed algorithm (such as, by using software that employs insufficient "randomness"), guessing a particular Bitcoin address could become trivial.

38. That the December 2020 hacker simultaneously drained the wallets in Clusters 1 through 13 suggests that these wallets had the same vulnerability, likely in the seed phrase. Attached as **Exhibit 3** is a true and correct copy of an Arkham Intelligence article reaching the same conclusion—namely, that "[i]t appears that LuBian was using an algorithm to generate its private keys that was susceptible to brute-force attacks."[5]

39. The hack also used a relatively high fixed transaction fee, suggestive of script-based automation designed to prioritize the hack, while exploiting common vulnerabilities. By using a high transaction fee, the hacker could ensure their malicious transactions are quickly processed by the network.

[5] Arkham Uncovers $3.5B Heist - the Largest Ever, Arkham Intelligence (Aug. 2, 2025), https://info.arkm.com/announcements/arkham-uncovers.

**ii. Significance**

40. The hacker of the addresses listed in the Forfeiture Complaint likely exploited a common vulnerability for the addresses across all Clusters. Simply, the fact that each and every address across all Clusters likely suffered from this same vulnerability cuts against anything other than a single owner involved in creating the seed phrase corresponding to the private keys for every address across all Clusters. The fact that the draining transactions used a high, fixed fee is further suggestive of an automated, brute-force attack targeting multiple addresses and "hitting" on the correct seed phrase combination shared by all Clusters. *See* **Exhibit 3**.

**D. Unified Emergency Recovery Efforts and Consolidation During and Immediately After the December 28, 2020 Hack**

**i. Factual Support**

41. I observed additional evidence of unified control and ownership, occurring during and immediately following the December 28, 2020 hack:

<u>December 28, 2020 Draining Event (Hack)</u>

a. On December 28, 2020, LuBian's wallets fell victim to a hack, resulting in a loss of approximately 127,000 Bitcoin across all Clusters. First Cohen Decl. ¶¶ 120, 132–133. These Bitcoin remained dormant in the hacker's wallet until 2024, when they were transferred to the addresses where they remain today (and which are presumably controlled by the government) between June 22 and July 23. It is exceedingly rare for a hacker to make no attempts to filter, obfuscate, exchange, or otherwise attempt to cash out their ill-gotten gains. The fact that the funds remained dormant for years until they were transferred to the current wallets is highly unusual.

Mid-Hack Interception

b. During the December 28, 2020 hack, the operator of the wallets managed to "rescue" some cryptocurrency assets before the hacker could steal them in their entirety. In my experience, owners of compromised cryptocurrency addresses routinely attempt to mitigate losses by moving funds to a new wallet, associated with a different, uncompromised seed phrase.

Unified Recovery Destination and Coordinated Timing

c. Salvaged assets from various Clusters were all funneled into the exact same destination—namely, address 3HRzRMNbcHR5PTfAzt5Lo7AHgT3oUhq9zG ("Recovery Address 1"). At exactly 9:29:19 PM, Recovery Address 1 received a transfer of 4,499 Bitcoin from an address in Cluster 4, a transfer of 491 Bitcoin from the sole address in Cluster 1, and a transfer of 4,198 Bitcoin from one of the addresses in Cluster 5. Then, at exactly 9:53:58 PM, Recovery Address 1 received a transfer of 299 Bitcoin from an address in Cluster 7. A true and correct representation of these transactions is available at **Appendix Figure 4**.

**ii. Significance**

42. The movement of funds from wallets in separate Clusters (1, 4, 5, and 7) to a single, unified address (Recovery Address 1) is indicative of unified control over each of these addresses in an effort to prevent further losses. Recovery Address 1 was likely generated with a separate seed phrase or otherwise segregated from the process used to generate the compromised wallets, to serve as a temporary place of safety for the remaining funds. The contemporaneous nature of the transfers also strongly suggests the coordinated act of a single entity responding to a pending

significant incident. The evidence suggests the owner of Recovery Address 1 and the addresses in Clusters 1, 4, 5, and 7 were one and the same.

**E. Post-Hack Continuity in Mining Reward Routing and Custody**

**i. Factual Support**

43. Following the hack, LuBian continued to mine Bitcoin until February 2021. First Cohen Decl. ¶ 103. It deposited newly mined, LuBian-stamped Bitcoin into Recovery Address 1—the same recovery address used to consolidate rescued funds from Clusters 1, 4, 5 and 7. A true and correct visual representation of LuBian's continued mining to Recovery Address 1 is available at **Appendix Figure 5**.

**ii. Significance**

44. After its mining destination in Cluster 4 was compromised, LuBian needed an alternate source to direct mining rewards. Recovery Address 1 represented an alternative and was likely intended to ensure uninterrupted, safe custody of mining rewards and other recovered funds as LuBian explored other, long-term options and address management. The fact that LuBian continued to direct mining rewards to Recovery Address 1 further indicates that the same operator, namely LuBian, was in control of the addresses that sent funds from Clusters 1, 4, 5, and 7 to Recovery Address 1.

**F. Leftover Assets Swept into the Same Recovery Address**

**i. Factual Support**

45. Following the initial rescue efforts during the December 2020 hack, a subsequent coordinated "sweeping" event occurred in February and March 2021. Specifically, the operator of eight addresses in Clusters 1, 4, 5, 7, and 13 transferred the residual balances in those addresses to

another centralized recovery address, 3265tcUcp8dBhBBwp4rKN3iyUptuHkzMq7 ("Recovery Address 2"). This was executed in two series of transactions.

46. Starting at 7:34 PM on February 27, 2021, leftover funds from addresses belonging to Clusters 4, 5, and 7 were swept into Recovery Address 2. Over the next 17 minutes, three addresses in Cluster 4 (including the 34J Address), one address in Cluster 5, and one address in Cluster 7 transferred Bitcoin to Recovery Address 2.

47. A few days later, on March 2, 2021, between 08:38 AM and 08:50 AM, addresses in Clusters 1 and 13 executed similar sweeping transfers to the same Recovery Address 2.

48. A true and correct visual representation of these transfers to Recovery Address 2 is available at **Appendix Figure 7**.

**ii. Significance**

49. This delayed, systematic collection of residual funds across five distinct Clusters (Clusters 1, 4, 5, 7, and 13) into a single destination is strikingly similar to the unified emergency response observed on the day of the hack.

50. In my training and experience, it is highly unlikely that independent entities operating at arm's length would coordinate to sweep their disparate remaining balances into the same consolidated recovery address months after a compromise. Instead, this secondary consolidation event strongly indicates that the same operator controlled these addresses (in Clusters 1, 4, 5, 7, and 13) and owned the Bitcoin they contained before and after the hack.

**G. Recovery Messages Broadcast by Every Address Across All Clusters**

**i. Factual Support**

51. In the months following the hack, all addresses in the government's Clusters, as well as five not included in the government's complaint but included in my previous declaration,

broadcast one or more messages across the blockchain in an effort to convince the hacker to return the funds. The owner of these addresses spent over $40,000 in Bitcoin to send hundreds of these messages across the blockchain. *See* First Cohen Decl., Ex. 25; *see also* **Exhibit 3** ("LuBian spent 1.4 BTC across 1516 different transactions to send these messages, which suggests that this is not a spoof from another hacker who has brute-forced the private keys."). Such messages are a relatively common method victims of cryptocurrency thefts use to contact the attacker and attempt to negotiate a return of funds. The messages here all self-identified the owner of each address as "LB," shorthand for LuBian. *See* First Cohen Decl. ¶ 137; *see also id.*, Ex. 27 (sample of a message sent by each address). The message directed the hacker to contact "LB" at an email address, 1228btc@gmail.com, which both references the date of the hack (12/28) and mirrors the email address that LuBian currently lists as its contact address on the LuBian.com webpage, 1228@lubian.com. Attached as **Exhibit 4** is a true and correct copy of the LuBian.com website, depicting the email address, "1228@lubian.com."

**ii. Significance**

52. Broadcasting a message on the Bitcoin address means signing a transaction, which means one must possess the seed phrase associated with the private key for the address, or the private key directly. The fact that the sender of the recovery messages could have chosen to identify as anything or anyone when sending these messages, combined with the fact that every address in all of the government's Clusters, for which there are other significant indicia attributing them to LuBian, sent these messages, leads me to conclude these addresses were under unified control of the entity calling itself LuBian, *i.e.*, the Iran-China Group. Further, the email address used in the recovery messages, "1228btc@gmail.com," is extremely similar to the address currently listed on LuBian's website, "1228@lubian.com," further reinforcing my conclusion.

Finally, the volume of messages (over 1,000) and aggregated message broadcasting cost (over $40,000) heavily weighs toward the true owner of the addresses, LuBian, being the one that sent the messages in a desperate attempt to negotiate with the "hacker."

### H. Long-Term Consolidated Holding

#### i. Factual Support

53. Following the December 2020 recovery efforts, the salvaged Bitcoin was not subsequently divided, dispersed, or returned to independent actors. Instead, the funds were periodically moved over the next five years with no effort to obscure the transactions. That is a practice consistent with safe custody practices of treasury management, not laundering.

54. Address bc1qvrwzs8unvu35kcred2z5ujjef36s5jgf3y6tp8 ("Treasury Address 1") currently holds the remaining Bitcoin originally held in the Clusters identified by the government that were not diverted to the hacker. **Table 4** below shows the path of the recovered Bitcoin from Recovery Address 1 through intermediate addresses to Treasury Address 1.

| Table 4 | | | |
|---|---|---|---|
| **Date / Time** | **From** | **To** | **BTC** |
| 12-30-2020 10:13:11 | Recovery Address 1 | 3AAd9bDZNhfGsJ6xacyBrtdB9UttPfsiWT | 9,480.00 |
| 12-31-2020 17:48:40 | 3AAd9bDZNhfGsJ6xacyBrtdB9UttPfsiWT | 3EGUWbncYN7hjcJYUnTc1vBc4njnuwn9Gb | 9,544.97 |
| 01-02-2021 11:00:53 | 3EGUWbncYN7hjcJYUnTc1vBc4njnuwn9Gb | Recovery Address 2 | 9,724.87 |
| 07-03-2022 11:02:40 | Recovery Address 2 | 35eN26XiZ1QQSSWwrm3gs2XCcq2FTamzWQ | 9,723.37 |
| 03-01-2023 07:23:22 | 35eN26XiZ1QQSSWwrm3gs2XCcq2FTamzWQ | 39DUz1NCkLu25GczWiAjjgZBu4mUjKbdNA | 9,723.37 |
| 10-15-2025 07:05:50 | 39DUz1NCkLu25GczWiAjjgZBu4mUjKbdNA | 34kn9zJe1K8kbGUJtMUar4cQrYiQRs9tef | 8,756.06 |
| 10-15-2025 13:06:01 | 34kn9zJe1K8kbGUJtMUar4cQrYiQRs9tef | 33Q4t6fX5j1Mxbf5bnXp8qumTfc89vCnWK | 8,558.70 |
| 10-15-2025 13:09:11 | 33Q4t6fX5j1Mxbf5bnXp8qumTfc89vCnWK | Treasury Address 1 | 8,673.07 |

55. Today, Treasury Address 1 contains approximately 13,100 BTC. This includes approximately 2,100 Bitcoin that LuBian mined after the hack. *See* First Cohen Decl. ¶ 103. A true and correct visual representation of this balance is available at **Appendix Figure 6**.

**ii. Significance**

56. The routing of the Cluster 1, 4, 5, and 7 funds from Recovery Address 1 through a series of addresses, including Recovery Address 2, where additional funds from Clusters 4, 5, and 7 were also sent, to their final destination, Treasury Address 1, is representative of efforts to secure the remaining funds from further compromise. The periodic moving of funds (beginning relatively frequently after the hack and then becoming less frequent) is consistent with implementation of enhanced security measures and practices, like key rotation, to protect what is left of LuBian's reserves.

57. The long-term, consolidated holding of cryptocurrency without efforts to obscure the transactions also suggests that LuBian views its holdings as a reserve, not as a vehicle for money laundering.

## CONCLUSIONS

58. In light of this evidence from the blockchain, I conclude that LuBian's mining and related addresses (Cluster 4) and the associated treasury, payout, and aggregation Clusters (Clusters 1–3, 5, 7, 9–10, and 12–13) were operated under common control.

59. First, addresses in Clusters 1–5, 7, 9–10, and 12–13 were created by a common owner. This is established by the similar timing and funding patterns for several groups of these addresses. And each of these groups involves an address from Cluster 5, indicating coordinated provisioning of addresses at inception by a single entity.

60. Second, the hack almost certainly resulted from improper seed phrase generation. The same hacker compromised all of the wallets in the government's complaint during the attack. It is exceedingly unlikely that separate entities employed the same seed phrase generation flaw, which was exploited by the same hacker at the same time. Rather, it is highly likely that each address shared the same vulnerability, further indicating common creation and control of these addresses.

61. Third, the use of a common recovery address—Recovery Address 1—in a unified emergency consolidation effort by the owner of addresses in Clusters 1, 4, 5, and 7 indicates that the same entity owned and controlled those addresses and Recovery Address 1.

62. Fourth, LuBian continued its mining operation for a period of time after the hack. Because LuBian could not use the mining payout address in Cluster 4 that had been compromised, it instead routed mining rewards to Recovery Address 1. This proves LuBian exercised ownership and control over Recovery Address 1—and over addresses in Clusters 1, 4, 5, and 7, as described in the immediately preceding paragraph.

63. Fifth, the transfer of residual balances from addresses in Clusters 1, 4, 5, 7, and 13 to a centralized recovery address—Recovery Address 2—is consistent with further salvage and reconsolidation efforts of a common operator. The fact that funds from Recovery Address 1 passed through Recovery Address 2 further indicates that the same operator controlled Recovery Address 2 and addresses in Clusters 1, 4, 5, 7, and 13.

64. Sixth, the post-hack broadcasting of hundreds of messages from every address purporting to be from LuBian is strong evidence of LuBian's ownership and control. Because these messages were broadcast from every address in every Cluster, and because sending such messages requires signing a transaction with the seed phrase or private key for each address, these

messages further establish common ownership of the addresses in Cluster 6, 8, and 11 with the addresses in the other Clusters. Thus, LuBian owned and operated Clusters 6, 8, and 11.

65. Finally, the transfer of funds from Recovery Address 1 and Recovery Address 2 to a new treasury consolidation address, and the subsequent, periodic transfers of those funds through their current location in Treasury Address 1, represents enterprise-level safe custody practices in response to a hack from an unknown source.

66. On this record, the evidence is not consistent with a fragmented network of unrelated miners or external laundering intermediaries. Instead, this additional evidence indicates that 10 of the 13 Clusters—*i.e.*, all Clusters except for Clusters 6, 8, and 11—are highly likely to have been operated as a unified system under common operational control. The addresses in those Clusters hold approximately 127,016 BTC (approximately 99.80% of the seized total). Because LuBian indisputably mined directly into an address in Cluster 4, I conclude that the common operator and owner of the addresses in these 10 Clusters was LuBian.

67. Further, the identical messages sent from all addresses and the fact that all addresses likely suffered from the same seed phrase generation flaw further suggest that LuBian also owned and operated Cluster 6, 8, and 11, representing the remainder of the Bitcoin identified in the government's Clusters.

68. The conclusions I draw are further supported by the subsequent pattern of centralized treasury management in the post-incident period, including sustained consolidated custody through successor holding addresses rather than distribution consistent with independent owners, and later coordinated sweeps of residual balances from multiple Clusters into centralized custody destinations.

69. Based on all the foregoing, it is my opinion that the entity referring to itself as LuBian, *i.e.*, the Iran-China Group, exercised continued ownership, dominion, and control over every address in the government's Forfeiture Complaint at the time of the December 28, 2020 hack.

* * *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: March 11, 2026
Paris, France

Avigdor Sason Cohen

Avigdor Sason Cohen

# APPENDIX




*Figure 1*


[1] [2019-04-24 07:24:52] 0.0150000 BTC
3FrM1He - cluster 2
3FrM1He2ZDbsSKmYpEZQNGjFTLMgCZZkaf
[1] [2019-04-24 07:24:52] 0.0110025 BTC
338uPV - cluster 4
338uPVW8drux5gSemDS4gFLSGrSfAiEvpX
357R3FeNmySYeHuRfyhFd6nMwzoLDdjfwV
[1] [2019-04-24 07:24:52] 0.0120000 BTC
3GaB3nR - cluster-5
3GaB3nRWA1PLc3XQkkbpVtFwYYZEuMxD4i
[1] [2019-04-24 07:24:52] 0.0130000 BTC
3AWpzK - cluster 7
3AWpzKtkHfWsiv9RGXKA3Z8951LefsUGXQ
[1] [2019-04-24 07:24:52] 0.0140000 BTC
3NmHmQ - cluster 10
3NmHmQte2rP8pS54U3B8LPYQKkpG1pFF69
[1] [2019-04-24 07:24:52] 0.9889975 BTC
32cizna4vaCgvr4cEmjco54mfmE7Dzp5yj
[2] [2019-09-08 07:34:27] 0.1000077 BTC
39B6oS - cluster 9
39B6oSa58qNpFMGpuowtRHAYp3fM4ghXRq

***Figure 2***


[2] [2019-04-24 06:20:34] 0.0022517 BTC
[1] [2019-04-24 06:20:34] 0.0017483 BTC
[2] [2019-04-24 06:20:34] 0.0039359 BTC
[1] [2019-04-24 06:20:34] 0.0030558 BTC
[1] [2019-04-24 06:20:34] 0.4929965 BTC
[2] [2019-04-24 06:20:34] 0.0070035 BTC
3PWNGS - cluster-4
3HuUiX - cluster 5
[3] [2019-04-24 06:31:26] 0.0045834 BTC
[4] [2019-04-24 06:31:26] 0.0000750 BTC
[3] [2019-04-24 06:31:26] 0.4848232 BTC
[4] [2019-04-24 06:31:26] 0.0079304 BTC
34KYo7 - cluster 7
[3] [2019-04-24 06:31:26] 0.4800741 BTC
[3] [2019-04-24 06:31:26] 0.0090045 BTC
339khC - cluster 13
[3] [2019-04-24 06:31:26] 0.0100051 BTC
389JrN - cluster 12

***Figure 3***


3Pja5FPK - cluster 1
3Pja5FPK1wFB9LkWWJai8XYL1qjbqqT9
Ye
[1] [2020-12-28 21:29:19] 491 BTC
3PWNGS - cluster-4
3PWNGS2357TnjRX7FpewqR3e3qsWwpFr
JH
[1] [2020-12-28 21:29:19] 4,499 BTC
3GaB3nR - cluster-5
3GaB3nRWA1PLc3XQkkbpVtFwYYZEuMxD
4i
[1] [2020-12-28 21:29:19] 4,198 BTC
3MHa8J - cluster-7
3MHa8JJ3bu8j3x3iQHhqsrZvk1EjBQmC
78
[2] [2020-12-28 21:53:58] 299 BTC
Lubian Recovery Wallet
3HRzRMNbcHR5PTfAzt5Lo7AHgT3oUhq9
zG

***Figure 4***




*Figure 5*




*Figure 6*


3J4sTP - cluster 4
3J4sTPyD1g6KvNUSJxjwLs4iaPeDPqxU
Zr
[2] [2021-02-27 19:34:51] 0.0899664 BTC
Lubian Miner Wallet cluster 4
34Jpa4Eu3ApoPVUKNTN2WeuXVVq1jzxg
Pi
[2] [2021-02-27 19:34:51] 0.0015958 BTC
3PWNGS - cluster-4
3PWNGS2357TnjRX7FpewqR3e3qsWwpFr
JH
[3] [2021-02-27 19:43:43] 0.9894613 BTC
3MHa8J - cluster-7
3MHa8JJ3bu8j3x3iQHhqsrZvk1EjBQmC
78
[3] [2021-02-27 19:43:43] 0.9992354 BTC
3GaB3nR - cluster-5
3GaB3nRWA1PLc3XQkkbpVtFwYYZEuMxD
4i
[4] [2021-02-27 19:44:49] 0.9995565 BTC
3LjTXe... cluster-7
3LjTXe31gepN8nW3AZyKpyD2QwbtmfjN
wm
[5] [2021-02-27 19:51:09] 0.0096100 BTC
339khC - cluster 13
339khCuymVi4FKbW9hCHkH3CQwdopXiT
vA
[6] [2021-03-02 08:38:35] 0.0087286 BTC
3Pja5FPK - cluster 1
3Pja5FPK1wFB9LkWWJai8XYL1qjbqqT9
Ye
[7] [2021-03-02 08:50:59] 0.5952870 BTC
Lubian Recovery Wallet
3265tcUcp8dBhBBwp4rKN3iyUptuHkzM
q7

***Figure 7***