**GIBSON DUNN**

Robert Weigel
Partner
T: +1 212.351.3845
M: +1 917.573.8265
rweigel@gibsondunn.com

June 8, 2026

VIA CM/ECF

The Honorable Rachel P. Kovner
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *Fritz et al. v. Iran and China Investment Development Group*, No. 25-cv-7093

Dear Judge Kovner:

Victims respectfully submit this response to the United States' notice of supplemental authority, Dkt. 125.  The out-of-circuit district-court opinion it cites is readily distinguishable and inconsistent with binding Second Circuit authority holding that all Iranian assets that are blocked by executive order are subject to execution under TRIA, regardless of whether those assets were seized or physically frozen prior to the government's forfeiture action.  It thus poses no obstacle to granting Victims' attachment motion.

In *United States v. Gutierrez-Ochoa*, a cartel member pled guilty to laundering narcotics trafficking proceeds and agreed to criminal forfeiture of various assets as part of his guilty plea. 2026 WL 1157964, at *1 (D.D.C. Apr. 29, 2026).  After the preliminary order of forfeiture had been entered, cartel victims sought to attach these same assets under TRIA, and the district court denied their attempts to do so both in the criminal forfeiture proceeding and in a separate attachment action.  *Id.* at *1-2 (dismissing victims' third-party petition in the forfeiture action); *Miller v. Juárez Cartel*, No. 23-95, Minute Order (D.D.C. Apr. 29, 2026) (denying, "for the reasons explained in" *Gutierrez-Ochoa*, attachment motion in standalone action).

Relevant here, the court held that the forfeited assets were not covered by TRIA because they were never "'seized or frozen' under TWEA, IEEPA, or the Narcotics Kingpin Act, as required by [TRIA § 201(d)(2)(A)]."  *Gutierrez-Ochoa*, 2026 WL 1157964, at *13.  Although pursuant to the Narcotics Kingpin Act and corresponding OFAC designations, "[a]ll property and interests in property that are in the United States" belonging to the cartels at issue "are blocked," *id.* at *12 (quoting 31 C.F.R. § 598.202(a)), and even the government had conceded that much of the defendant's property was accordingly blocked "by operation of law," *id.* at *13, the court inexplicably held that the defendant's assets were not blocked prior to his arrest, including because there was no "OFAC blocking order" specifically directed at the assets, *id.*  And the court explained that the subsequent "criminal seizure and forfeiture" of the assets, concurrent with the defendant's arrest, did not block the assets for purposes of TRIA.  *Id.*

The district court's approach in *Gutierrez-Ochoa* decidedly is not the law in the Second Circuit.  To the contrary, as Victims have explained, binding Second Circuit precedent makes clear that "all assets belonging to an entity that satisfies Executive Order 13,599's definition of

# GIBSON DUNN

'Government of Iran'"—which includes both "the Government of Iran" itself and any "agency[ ] or instrumentality thereof"—"are automatically blocked," *i.e.*, blocked by default operation of law. *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 137-41 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018); *accord Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022) (holding "that—regardless of whether it has been frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is 'blocked' within the meaning of TRIA"); Dkt. 70, at 17-19; Dkt. 113, at 11-14. Here, as Victims have alleged, the Bitcoin are property of the Iran-China Group, an Iranian instrumentality, so they were "'blocked' within the meaning of TRIA" the moment they entered this country. *Levinson*, 44 F.4th at 98 n.6. Under this binding precedent, *Gutierrez-Ochoa*'s requirement of additional indicia of blocking—beyond the operative statutory and regulatory authorities—is wrong.

*Gutierrez-Ochoa* also wrongly suggested—without formally deciding—that TRIA's "'notwithstanding' clause" might serve only "to abrogate a foreign state's sovereign immunity." 2026 WL 1157964, at *15-16. But such a conclusion contradicts binding precedent in the Second Circuit (and, for good measure, in the D.C. Circuit as well, as *Gutierrez-Ochoa* seemed to recognize, *id.* at *15 (quoting *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 n.1 (D.C. Cir. 2025) (TRIA "clearly requires courts to disregard other statutory provisions that conflict with [its] scope"))). Instead, the Second Circuit has held that "TRIA's 'notwithstanding' clause" "supersede[s] all other laws." *Havlish v. Taliban*, 152 F.4th 339, 359 (2d Cir. 2025) (citation omitted).

For this reason, the government's suggestion that *Gutierrez-Ochoa* shows that Victims' attachment motion is barred by the criminal-forfeiture statute, 21 U.S.C. § 853(k), also fails. *See* Dkt. 125, at 2. As Victims have explained, TRIA's "notwithstanding" clause overrides § 853(k). Dkt. 113, at 7-10.

And the government's focus on a criminal forfeiture provision is inapt in any event given the posture of the current proceedings. In *Gutierrez-Ochoa*, the government had already obtained an order of criminal forfeiture against the assets at issue, following the defendant's guilty plea agreeing to forfeiture, before the plaintiffs sought attachment under TRIA. 2026 WL 1157964, at *1, *13. By contrast, here, the government has not obtained any criminal forfeiture order against the Bitcoin—indeed, its criminal forfeiture proceeding has barely begun because it is tied to the government's criminal case against Chen Zhi, which has stalled at the outset. *See generally United States v. Chen*, No. 1:25-cr-312 (E.D.N.Y.). Criminal forfeiture is *in personam* and cannot occur until a defendant has been convicted. *See von Hofe v. United States*, 492 F.3d 175, 185 (2d Cir. 2007). Here the government has not yet even established personal jurisdiction over Chen, who is imprisoned in China, so any conviction and corresponding criminal forfeiture order remains far away. *See United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) (per curiam) (personal jurisdiction is established in a criminal case "whenever an individual, charged with a crime over

# GIBSON DUNN

June 8, 2026
Page 3

which the Federal court has subject matter jurisdiction, is brought before that court"). That is likely why the government has filed a separate civil forfeiture proceeding against the Bitcoin (which itself is barely beyond the jurisdictional stage), and that civil forfeiture action also does not prevent Victims from pursuing the Bitcoin under TRIA. *See* Dkt. 113, at 15-16.[1]

Finally, *Gutierrez-Ochoa* actually *undermines* one of the government's arguments. As it has here, the United States there "posit[ed]" that regulations authorizing it to use otherwise blocked property for its "official business" rendered the covered assets not blocked. 2026 WL 1157964, at \*12; *see* Dkt. 96, at 13-14. But as the *Gutierrez-Ochoa* court observed (admittedly, without deciding), "broad language" in the D.C. Circuit's *Levin* decision "casts doubt" on that view, since *Levin* "rejected the view that '*any* license operates to un-freeze and un-block assets for TRIA purposes.'" 2026 WL 1157964, at \*13 n.9 (quoting *Levin*, 156 F.4th at 640). That suggestion is right; as Victims have explained, regulations authorizing the government to conduct "official business" in blocked assets "do[ ] not displace a general block on property" and do not impact the blocked status of those assets. Dkt. 113, at 14-17.

In sum, the decision in *Gutierrez-Ochoa* should neither prevent Victims' attachment nor delay the Court's decision here. Victims respectfully request that the Court grant their attachment motion—which would merely preserve their interest in the Bitcoin without conclusively resolving any merits issues—as soon as the Court is able.

Sincerely,

/s/ *Robert L. Weigel*
Robert L. Weigel

---

[1] For the same reason, *Gutierrez-Ochoa*'s conclusion that the relation-back provision of the criminal-forfeiture statute—which deems the government to hold title to criminally forfeitable property "upon the commission of the act giving rise to forfeiture," 21 U.S.C. § 853(c)—foreclosed TRIA attachment is also inapplicable here. *See* 2026 WL 1157964, at \*17. The relation-back provision does not "transfer ownership of the property until there is a final judgment of [criminal] forfeiture"—which remains far away. *Counihan v. Allstate Ins. Co.*, 25 F.3d 109, 112 (2d Cir. 1994) (interpreting materially identical language in 21 U.S.C. § 881(h)).