**ANDERSON KILL P.C.**

7 TIMES SQUARE, 15TH FLOOR / NEW YORK, NY 10036 / 212.278.1000 / www.andersonkill.com

Jerry S. Goldman, Esq.
Jgoldman@andersonkill.com
212.278.1569

October 7, 2026

The Honorable Rachel P. Kovner
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Noala Fritz, et al. v. Iran and China Investment Development Group d/b/a Lubian.com*, Civil Action No. 1:25-cv-07093 (RPK)(CHK) - *O'Neill* Intervenors' Opposition to *Breitweiser* Motion for Attachment

Your Honor:

The undersigned counsel represent approximately 12,100 family members and estates of people killed in the September 11, 2001 attacks on the United States, and people who suffered serious physical injuries in those attacks (collectively, the "*O'Neill* Intervenors[1]"). The *O'Neill* Intervenors make up roughly 95 percent of the death and serious physical injury Plaintiffs in the Multi District Litigation pending in the Southern District of New York entitled *In Re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (GBD) (SN). Following this Court's September 29, 2026 Memorandum and Order granting intervention as of right (ECF No. 133), the *O'Neill* Intervenors filed their Intervenor Complaint on October 6, 2026. (ECF No. 142.)

We write this brief letter in opposition to the letter motion submitted by the *Breitweiser* Intervenors dated October 2, 2026 (ECF 137) for an attachment of the 127,271 Bitcoin that are the subject of this action and that are presently securely under the control of the government of the United States. (We stand ready to submit a fuller and more formal Memorandum of Law on this subject if the Court so desires.)

The two related and most remarkable aspects of the *Breitweiser* motion are these: 1) the *Breitweiser* Intervenors (a relatively small number of 9/11 plaintiffs) candidly admit that their purpose in seeking attachment is to establish and/or preserve their purported priority to the Bitcoin over all

---

1 Per the Court's July 16, 2026 Docket Text Order, we are filing under the party name "*O'Neill* Intervenors." However, the undersigned counsel represent the "*O'Neill* Intervenors," "*Burnett* Intervenors," "*Ashton* Intervenors," and "*Ashton-Burlingame* Intervenors."

We are filing this letter today: 1) because the *Breitweiser* Intervenors have already filed all their paper submitted in support of their application, notwithstanding this Court's Bundling Rule; and 2) so that the Court will receive this letter in advance of the scheduled October 13 conference in this case.

other victims of the September 11 attacks and over all other victims of Iranian terror; and 2) the *Breitweiser* Intervenors do not attempt to show, and cannot show, that preserving priority is a ground for attachment under New York law, which this Court has indicated governs here.

The issues presented by the *Breitweiser* Intervenors' present motion are already familiar to the Court by reason of the *Fritz* Plaintiffs' prior similar application in this same case for an attachment (ECF No. 69) - an application concerning which this Court has wisely reserved decision, effectively denying the *Fritz* Plaintiffs' attachment motion pending further developments in this turnover case and the related forfeiture proceeding.[2] For the reasons detailed below, the *O'Neill* Intervenors respectfully submit that the same result should follow here.

The *Breitweiser* Intervenors state that their application for attachment is governed by New York state law. But they then make virtually no effort to explain why Article 62 of the CPLR justifies an attachment here.

Importantly, there is nothing in CPLR §6212(a) (which governs all applications for an attachment) or anywhere else in the CPLR stating, or even suggesting, that a mere desire to gain or preserve priority over other creditors - the *Breitweiser* Intervenors' candidly stated purpose here - is a valid basis for attachment.

It is well settled that attachment is a "harsh remedy" and is construed narrowly and in favor of the party against whom the remedy is invoked. *Penoyar v. Kelsey*, 150 N.Y. 77, 80 (1896); *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 59-60 (1st Dept. 2013); *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009). As this Court noted in its February 2, 2026 Text Order herein, the choice to order an attachment is one over which courts have broad discretion. *Iraq Telcom Ltd. v. IBL Banks S.A.L.*, 43 F.4th 263, 270, 272 (2d Cir. 2022). Thus, even where all the statutory criteria for attachment are satisfied, attachment can be denied. *Morgenthau v. Avion Res. Ltd.*, 49 A.D.3d 50, 58 (1st Dept. 2007), *modified on other grounds*, 11 N.Y.3d 383, 387 (2008); *Cargill Fin. Servs. Int'l. v. Bank Fin. & Credit Ltd.*, 70 A.D.3d 456, 456 (1st Dept. 2010).

In particular, even where all the statutory criteria for attachment are satisfied, it is appropriate for the court to deny attachment where, as a practical matter, there is no need for an attachment because there is no danger that the asset in question will become unavailable. 12 Jack B. Weinstein, Harold Korn, Arthur R. Miller, *New York Civil Practice*: CPLR ¶ 6201.03 (David L. Ferstendig ed., 2d ed. 2022) ("[I]f jurisdiction over the defendant can be secured without attaching property and there

[2] As the government correctly pointed out in its opposition to the *Fritz* application (ECF 96): 1) in order to obtain an attachment the movant must (among other things) demonstrate that it is probable the movant will ultimately succeed *on the merits* of its case, *see* CPLR §6212(a); and 2) a procedural motion for an attachment at this early stage of this Bitcoin litigation is a poor vehicle for resolving all the complex issues presented in both this turnover proceeding and the related forfeiture proceeding as to which party or parties is ultimately entitled *on the merits* to the Bitcoin at issue.

is no reason to believe that the defendant will not satisfy any judgment entered against the defendant, an order of attachment should be withheld."); *accord* David D. Siegel & Patrick M. Connors, *New York Practice* § 317 (6th ed.), Westlaw (database updated Dec. 2024): ("Even if the plaintiff makes out a case for attachment under CPLR § 6201, its granting is still discretionary with the court ... and if the judge should perceive from the papers that the plaintiff does not need an attachment either for jurisdiction or security, discretion is appropriately exercised against it even though a CPLR § 6201 showing has been made"); *accord Alcova Investment LLC v. Lakhmna*, 26 Civ. 3729 and 4080, 2026 WL 2607013 (S.D.N.Y. Sept. 3, 2026); *VisionChina*, 109 A.D.3d at 60 ("In addition" to satisfying statutory requirements "the party seeking attachment must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment") (citations omitted); *In Re Maidan*, No. 8-19-77027-LAS, 2024 WL 386826 at *6-7 (Bankr. E.D.N.Y. Feb. 1, 2024) (collecting authorities); *Ames v. Clifford*, 863 F. Supp. 175, 177 (S.D.N.Y. 1994) ("... New York courts have required an additional showing that something, whether it is defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment") (citations omitted).

Here, as noted by the Honorable Magistrate Judge Henry in her brief December 31, 2025 Text Order issued in connection with the *Fritz* Plaintiffs' original application for an attachment, there is plainly no need for an attachment for security purposes here, because the Bitcoin is already safely in government custody and cannot go anywhere without leave of court. As a result, the Bitcoin will certainly be available to satisfy any judgment that may ultimately be rendered in favor of any of the original *Fritz* Plaintiffs or Intervenor Plaintiffs in this proceeding.

The motion for attachment should therefore be denied.[3] The *Breitweiser* Intervenors do not and cannot cite to any authority supporting their contention that, without more, their mere desire to gain priority over other terror victims is somehow a valid basis for the "harsh remedy" of a pre-execution attachment.

The *O'Neill* Intervenors oppose pre-execution attachment both because such attachment is not warranted by law and because, looking ahead, the *O'Neill* Intervenors' ultimate goal here is for the Court to distribute the Bitcoin not to the *Fritz* Plaintiffs alone, nor to the Breitweiser Intervenors alone, nor to the *O'Neill* Intervenors alone; rather, the *O'Neill* Intervenors respectfully submit that

---

[3] Moreover, the *Breitweiser* Intervenors' application for an attachment also appears deficient in that their proposal to post a bond of only five hundred dollars is inadequate.

Such a bond is required by CPLR § 6212(b) and is customarily set at between five to ten percent of the amount sought to be restrained - which here would appear to equate to a bond in the vicinity of a half billion dollars, depending on the price of Bitcoin at the time the bond is ordered. *See My-Part Software Ltd.* v. *Fluent Trade Techs. Ltd. S.A.R.L.,* No. 650316/2017, 2017 WL 5890772, at *3 (N.Y. Sup. Ct. Nov. 29, 2017); 4A West's McKinney's Forms Civil Practice Law and Rules § 11:6.

The *Breitweiser* Intervenors' self-serving suggestion that a far, far smaller bond is adequate because they do not presently seek to levy on the Bitcoin immediately is unsupported by *any* authority.

the Court should ultimately distribute the Bitcoin on a fair and equitable basis to *all* victims of Iranian terror who hold judgments against Iran.

Notably, New York law – which pursuant to Fed. R. Civ. P. 69(a) governs a proceeding in aid of execution of a judgment like this one, *see CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468-71 (2d Cir. 2018) – and in particular CPLR § 5240 vests this Court with broad discretionary power to "craft flexible and equitable responses to claims that arise with respect to enforcement of valid money judgments." *Plymouth Venture Partners, II, LP v. GTR Source, LLC*, 37 N.Y.3d 591, 599-603 (2021); *In Re Persky*, 893 F.2d 15, 18 (2d Cir. 1989). *See generally* Siegel*, New York Practice*,§ 522.[4]

Accordingly, the *O'Neill* Intervenors respectfully submit that this Court should deny the *Breitweiser* Intervenors' motion for an attachment, and more broadly that going forward this Court can and should work toward a resolution of this case (and of the associated forfeiture proceeding) that provides for a fair and equitable distribution of the Bitcoin to *all* victims of Iranian terror.

---

4 Assuming only for argument's sake that the government were to prevail over the terror victim claimants and other claimants in the forfeiture proceeding, and if execution were denied in this case, then there is good reason to believe that the government would at that point be required by 34 U.S.C. § 20144(e)(2)(A)(i) of the U.S. Victims of State Sponsored Terrorism ("VSST") Act to deposit some or all of the proceeds of the Bitcoin into the U.S. VSST Fund. *See Englehardt v. Blanche*, 185 F.4th 152 (D.C. Cir. 2026)

That would be the case because the forfeiture proceeding can properly be regarded as resulting from one or more federal offenses (enumerated in the Chen Zhi indictment) that arise of out of the Defendant China-Iran Group (as well as the Prince Holding Group and Chen Zhi) "doing business" with Iran with the purpose of evading U.S. sanctions on Iran. *Id.*

Depositing some or all of the proceeds of the Bitcoin into the U.S. VSST Fund would be another way to achieve a broad and equitable distribution of the Bitcoin to victims of terror. And that is the goal that the *O'Neill* Intervenors seek to achieve, either through this turnover proceeding, or via the U.S. VSST Fund, or by agreement among the parties.

Dated: October 7, 2026

Respectfully submitted,

**ANDERSON KILL P.C.**

By: */s/ Jerry S. Goldman*
Jerry S. Goldman, Esq.
Ethan Greenberg, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Tel.: (212) 278-1000
jgoldman@andersonkill.com

*Attorneys for O'Neill Intervenors*

**KREINDLER & KREINDLER LLP**

By:*/s/ Megan Wolfe Benett*
Justin T. Green, Esq.
Megan Wolfe Benett, Esq.
485 Lexington Ave
New York, NY 10017
Tel.: (212) 973-3438
jgreen@kreindler.com
mbenett@kreindler.com

*Attorneys for Ashton Intervenors*

**MOTLEY RICE LLC**

By: */s/ John M. Eubanks*
John M. Eubanks, Esq.
John C. Duane, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
jeubanks@motleyrice.com
jduane@motleyrice.com

*Attorneys for Burnett Intervenors*

**SPEISER KRAUSE, P.C.**

By*/s/ Jeanne M. O'Grady*
Jeanne M. O'Grady, Esq.
800 Westchester Avenue,
Suite S-608
Rye Brook, NY 10573
Tel.: (914) 220-5333
jog@speiserkrause.com

*Attorneys for Ashton-Burlingame Intervenors*

cc: All Counsel (Via ECF)