BARON & BUDD, P.C.®

DALLAS | BATON ROUGE | NEW ORLEANS | LOS ANGELES
SAN DIEGO | NEW YORK | WASHINGTON, D.C.

800.222.2766
tel 214.521.3605
fax 214.279.9915

3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219-4281

February 6, 2026

**VIA ECF**
The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Approximately 127,271 Bitcoin**
**Case No. 25-cv-5745 (RPK)**

Dear Judge Kovner:

The Pennington and Driscoll Claimants (together, "Moving Claimants") respectfully submit this letter in reply to the government's response to various claimants' motions for leave or extensions of time to file claims. Specifically, below the Moving Claimants briefly respond to two arguments asserted by the government. First, the government argues that, as a legal matter, the Moving Claimants lack standing under the Terrorism Risk Insurance Act ("TRIA") because the Bitcoin in this case is not a blocked asset. Second, the government contends that the Moving Claimants failed to establish excusable neglect to extend the deadline to file their claim. Respectfully, the government's arguments lack merit on both points, and its interpretation of TRIA is legally flawed.

## I. The Moving Claimants Have Standing to Assert Their Claim Under TRIA.

### a. The Bitcoin is a "Blocked" Asset Under TRIA.

TRIA allows judgment holders against terrorist parties to execute against blocked assets. *See* TRIA, Pub. L. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified as 28 U.S.C. § 1610 Note. Specifically, it provides that "[n]otwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." *Id.* § 201(a).

A "blocked asset" under TRIA is one seized by the United States government under section 5(b) of the Trading With the Enemy Act or under sections 202 and 203 of the International Emergency Economic Powers Act ("IEEPA"). *Id.* § 201 (d)(2)(A). A "blocked asset" does not

include property that "is subject to a license issued by the United States Government for *final* payment, transfer, or disposition." *Id.* § 201(d)(2)(B) (emphasis added). "[R]egardless of whether it has been frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is "blocked" within the meaning of TRIA." *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98, n.6 (2d Cir. 2022); *see also Kirschenbaum v. Assa Corporation*, 934 F.3d 191, 199-200 (2d Cir. 2019) ("TRIA § 201(d)(2) defines 'blocked asset,' but we need not explore that definition here…[previously] we held that all assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked.") (internal citations and quotations omitted).

The government attempts to avoid the Second Circuit's clear directive that Executive Order 13,599 blocks all assets belonging to the Government of Iran and its agents and instrumentalities under TRIA, regardless of how the government seizes it. *Levinson*, 44 F.4th at 98, n.6; *Kirschenbaum*, 934 F.3d at 199-200. To support its interpretation of TRIA, the government cites only to a nonbinding Eleventh Circuit case that does not concern Iranian assets and a narrow case from this district that was issued before Executive Order 13,599 took effect. *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 915 (11th Cir. 2013) (ruling that assets of a Colombian money exchange house associated with the FARC seized under the Kingpin Act were not blocked under TRIA); *Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 75 (E.D.N.Y. 2004) (ruling that relevant accounts were not frozen under TRIA on the basis that the applicable OFAC licenses allowed its owners to retrieve the funds under certain conditions). This Court should follow the Second Circuit's clear precedent, and find—consistent with this Circuit's law—that the authority the government used to freeze Iran's Bitcoin is irrelevant to its status as a blocked asset.

b. <u>The Government's Pending Civil Forfeiture Action Does Not Unblock the Bitcoin.</u>

There is no binding Second Circuit law supporting the government's argument that its civil forfeiture claim unblocks an asset under TRIA. The government relies on *Levin v. United States*, 774 Fed. App'x 49, 50 (2d Cir. 2019), *United States v. BNP Paribus S.A.*, No. 14-cr-460, 2015 WL 1962882, at *3 (S.D.N.Y. April 30, 2015), and *Kirschenbaum v. 650 Fifth Avenue & Related Props.*, 830 F.3d 107, 139 (2d Cir. 2016) to support this argument. As an initial matter, the court in *BNP Paribus S.A.* decided that a claimant lacked standing to contest forfeiture solely because she could not establish that the assets at issue were traceable to the entity against which she held a judgment. *See* 2015 WL 1962882, at *3-5. In its analysis, the court recognized that TRIA, indeed, provides an avenue to contest forfeiture. *See id*. at *3 (stating that "in order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims" and recognizing that TRIA governed the petitioner's claim).

The government cites *Levin* without relevant context. There, judgment creditors of Iran filed a claim five years too late under Rule G(5) and offered no compelling reason for their delay. *Levin v. United States*, 774 Fed. App'x at 50. The claimants then argued that TRIA's "notwithstanding" language preempted even Rule 5G's procedural requirements. *Id.* The court rejected that argument. *Id.* Placed in its proper context, the *Levin* court's statement that TRIA does

not permit a judgment creditor to "seek a distribution of property seized by the Government" clearly stands for a much different proposition—that TRIA does not enable a judgment creditor who failed to comply with civil forfeiture requirements and filed a claim five years late to seek assets seized by a final judgment of forfeiture. *Id.* Subsequent Second Circuit precedent confirms this interpretation. *See, e.g., Levin v. Miller*, 21-cv-1116, 2022 WL 17574574, at *3 (2d Cir. Dec. 12, 2022) ("Here, had the Levins filed a timely claim, they could have contested the Government's forfeiture action.").

Similarly, the government's citation to *Kirschenbaum* is ultimately at odds with the case's holding. In *Kirschenbaum*, judgment creditors of Iran and the government sought Defendant's property under TRIA and civil forfeiture law, respectively. *Kirschenbaum*, 830 F.3d at 121 ("Plaintiffs began filing these turnover actions in December 2008, shortly after the Government initiated its civil forfeiture action. Though Plaintiffs and the Government both seek to seize Defendants' properties, they proceed on fundamentally different theories that require fundamentally different proofs."). The court ultimately reversed and remanded on both fronts for the district court to resolve factual disputes as to whether the assets were owned by the Government of Iran or its agent or instrumentality. *Id.* at 141-42. Accordingly, the Second Circuit did not recognize the government's theory that a forfeiture proceeding's very existence prevents TRIA claimants from asserting their claims. *Id.*

The government's citations to other Circuit precedents fare no better. The government relies on *United States v. Holy Land Foundation for Relief & Development*, 722 F.3d 677, 685 (5th Cir. 2013) and *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d 607, 622-25 (7th Cir. 2015). Both cases ruled that when the government obtained licenses from the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") enabling them to pursue forfeiture of certain terrorist assets under IEEPA, it unblocked those assets that had previously been blocked. *Holy Land Foundation for Relief & Development*, 722 F.3d at 685-89; *All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d at 622-25. Here, OFAC did not issue a license for the government to seek forfeiture on the Bitcoin pursuant to IEEPA and as such, these cases have no bearing on the case at bar.

Moreover, while *Holy Land Foundation for Relief & Development and All Funds on Deposit with R.J. O'Brien & Associates* are readily distinguishable from this case, Claimants also respectfully submit that they were wrongly decided and that this Court should instead apply the well-reasoned analysis from the recent D.C. Circuit case *Estate of Levin v. Well Fargo Bank, N.A.*, 156 F.4th 632, 639-42 (D.C. Cir. 2025). The D.C. Circuit ruled that funds subject to civil forfeiture remained blocked under TRIA despite OFAC's license authorizing the government to seek forfeiture under IEEPA. *Id.* at 639-41. ("[A]lthough section 853 authorizes both asset blocks and criminal-forfeiture proceedings against the blocked assets, *it does not displace the IEEPA block*.") (emphasis added). The court reasoned in part that "the IEEPA block still prevented all dealing in the funds unless and until a court entered a final forfeiture order." *Id.* at 641. Here, Executive Order 13,999 remains in place and blocks assets belonging to the Government of Iran and its agents and instrumentalities until this Court enters a final forfeiture order.

## II. <u>The Moving Claimants Have Demonstrated Excusable Neglect.</u>

"In the case of an untimely claim, courts generally permit a party to file a belated claim if the party demonstrates excusable neglect for failure to timely file, in line with the standards set forth in Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure." *United States v. $417,143.48*, 13-cv-5567, 2015 WL 5178121, at *9 (E.D.N.Y. Sept. 2, 2015) (aff'd *United States v. $417,143.48*, 682 F. App'x at 19). Courts look to factors like "when the claimant became aware of the seizure, the reasons proffered for any delay, whether the government was aware of the claimant's interest, and any prejudice to the government." *$417,143.48*, 2015 WL 5178121, at *9. As set forth in the Moving Claimants' letter motion requesting leave to late file a verified claim, they did not become aware of the Bitcoin's connection to Iran until late December, after the Court's deadline to file. The Moving Claimants were not burying their heads in the sand as suggested by the government but rather took the government at its word when it described Lubian as "a Chinese bitcoin mining operation" in its Complaint and attributed the Bitcoin at issue to parties unrelated to the Government of Iran. Forfeiture Compl. ¶ 16(u). As soon as the Moving Claimants became aware of the Bitcoin's connection to Iran, they expeditiously filed their letter motion to protect their claim.

The Second Circuit has recognized that a claimant's reliance on incorrect government statements supports a finding of excusable neglect. *See United States v. Starling*, 76 F.4th 92, 102-03 (2d Cir. 2023) (reversing the district court's order striking a late-filed claim and finding that the claimant met the good cause standard when she late-filed her claim because she detrimentally relied on a state prosecutor's incorrect description of federal forfeiture law). The cases the government relies on further bolster a finding of excusable neglect in this case. For example, the government relies in part on *United States v.$96,000 in United States Currency* to support its contention that excusable neglect exists only when "concrete, real-world obstacles intervened to prevent timely filing." No. 18-cv-5993, 2019 WL 3334493, at *3 (S.D.N.Y. July 25, 2019). However, in that case, obstacles entirely internal to the claimant's counsel's firm caused the late filing. *Id.* (finding excusable neglect where the firm's calendar clerk did not record the deadline and the person responsible for tracking case deadlines left the firm).

Moreover, in contrast to the circumstances present here, in the other cases the government cites where courts found excusable neglect, the government provided direct notice to the claimants of their interest in the claim. *United States v.$153,115.00 in United States Currency*, No. 21-cv-380, 2021 WL 3507894, at *1 (W.D.N.Y. Aug. 10, 2021); *United States v.$10,990.00 in United States Currency*, No. 18-cv-15, 2019 WL 1332585, at *2 (D.N.M. Mar. 25, 2019). Thus, even where claimants in those matters were on direct notice to timely file their verified claims and did not—as compared to the Moving Claimants who were not on direct notice—courts still permitted them to file late.

The cases the government relies on which did not find excusable neglect are clearly distinct from this case. *United States v.$130,000 in United States Currency*, No. 19-cv-3440, 2021 WL 2433733, at *3 (N.D. Ill. June 15, 2021) ("[T]he government explicitly directed the brothers' attorney to Supplemental Rule G as supplying the relevant procedural requirements; advised the attorney that those requirements included the filing of a 'petition or claim'"); *United States v. $153,115.00 in United States Currency*, No. 21-cv-380, 2021 WL 3507894, at *3 (W.D.N.Y. Aug. 10, 2021) (claimant knew about the forfeiture and made the deliberate decision not to file a claim). Unlike in those cases, the Moving Claimants were not aware of their interest in this forfeiture action until *after* the filing deadline and did not intentionally fail to file before the deadline. The Moving Claimants did all that they could reasonably be expected to do under the circumstances to protect their interests in this case.

Finally, the government cannot articulate any reasonable prejudice it would face should the Court grant the Moving Claimants' request.[1] Indeed, the families, estates, and servicemembers permanently damaged by the state-sponsored terrorism of Iran—who for years have sought justice—are requesting only a two-week delay in the proceedings to be afforded the opportunity to file their righteous claims in this case. Accordingly, this Court should find good cause to extend their deadline to file a verified claim.

For the foregoing reasons, the Moving Claimants respectfully request that the Court grant their Letter Motion for Extension of Time to File Claims and extend their filing deadline two weeks from the date of the order granting the request.

Thank you for your consideration of this matter.

Respectfully,

*/s/ Celeste Evangelisti*
Celeste Evangelisti
Russell Budd (*pro hac vice* forthcoming)
Dan Alberstone (*pro hac vice* forthcoming)
Mike Thakur (*pro hac vice* forthcoming)
Marco A. Palmieri (*pro hac vice* forthcoming)
Baron & Budd, P.C.
3102 Oak Lawn Avenue #1100

---

[1] While the government has signaled it will oppose the Fritz claimants on the ground that they lack standing under the TRIA, it has not yet filed such an opposition. Accordingly, the government will not be prejudiced if it raises such an argument against all claimants at once, rather than piecemeal. Indeed, proceeding against all claimants together would promote judicial efficiency.

Dallas, TX 75219
(214) 521-3605 telephone
cevangelisti@baronbudd.com
rbudd@baronbudd.com
dalberstone@baronbudd.com
mthakur@baronbudd.com
mpalmieri@baronbudd.com

THE DRISCOLL FIRM, P.C.
Paul W. Johnson (*pro hac vice* forthcoming)
Christopher J. Quinn (*pro hac vice* forthcoming)
211 N. Broadway, 40th Floor
St. Louis, MO 63102
(314) 932-3232 telephone
(314) 932-3233 facsimile
paul@thedriscollfirm.com
chris@thedriscollfirm.com

THE DRISCOLL FIRM, LLC
John J. Driscoll (*pro hac vice* forthcoming)
1311 Avenida Juan Ponce de Leon, 6th Floor
San Juan, PR 00907
(314) 222-2605 telephone
(314) 932-3233 facsimile
john@jjlegal.com

Cc: Counsel of record (via ECF)