ANDERSON KILL P.C.
7 TIMES SQUARE, 15TH FLOOR / NEW YORK, NY 10036 / 212.278.1000 / www.andersonkill.com

Jerry S. Goldman, Esq.
Jgoldman@andersonkill.com
212.278.1569

***Via CM/ECF*** February 6, 2026

The Honorable Rachel P. Kovner
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Approximately 127,271 Bitcoin*, Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

The undersigned represent over 12,000 claimants (the "9/11 Claimants") who are family members and estates of people killed in the September 11, 2001 attacks on the United States (the "9/11 Attacks") and people who were seriously injured in those attacks. The 9/11 Claimants are made up of four plaintiff groups who collectively have been awarded a total of approximately 93 billion dollars ($93,477,373,915.00, exclusive of interest) in compensatory damages judgments against the Islamic Republic of Iran ("Iran") in the Multi District Litigation pending in the Southern District of New York that is entitled *In Re Terrorist Attacks on September 11, 2001*, 03-mdl-1570 (GBD) (SN). The 9/11 Claimants include the *O'Neill* Claimants, as well as the *Ashton*, *Burnett*, and *Ashton-Burlingame* Claimants. The 9/11 Claimants make up approximately 95 percent of the death and serious physical injury plaintiffs with judgments against Iran in the 9/11 MDL proceeding.

We submit this letter today in support of the *O'Neill* Claimants' prior January 19, 2026 request (ECF 66) – as amended on February 2, 2026 (ECF 162-163) to add in the bulk of the other judgment holders in the 9/11 MDL, into a single unified claim[1] – for an extension of time to file their verified claim to the 127,271 Bitcoin ("the Bitcoin") that are the subject of this action, and in reply to the government's letter to Your Honor of January 27, 2026 (ECF 126) opposing our extension request and the similar requests made by other claimants to the Bitcoin.

The government in substance makes two arguments why the extension should be denied. First, the government contends that under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, Sec. 201(a), 116 Stat. 2322, 2337-40 (2012), codified at 28 U.S.C. § 1610 note, both the 9/11 Claimants and all other claimants who assert claims based on their judgments against Iran for acts of terrorism – collectively, "the Iran Terror Victim Claimants" – lack

[1] The *O'Neill* Claimants amended their claim on February 2 to include the *Ashton*, *Burnett*, and *Ashton-Burlingame* Claimants. ECF 162 and 163.

standing because (a) the Bitcoin are not "blocked assets," and (b) the Bitcoin are not the property of an agency or instrumentality of Iran.

Second, the government contends that the 9/11 Claimants (and the other Iran Terror Victim Claimants) "Have Not Provided a Compelling Reason for Their Delay in Filing."

For the reasons set forth below and in the filings of the other victims of Iranian terrorism, we submit that the government is wrong on both points, and that there is no good reason in law or logic why the 9/11 Claimants – all of whom have suffered profoundly as a result of Iranian sponsored terrorism – should not be heard by this Court on the merits of their claim to the Bitcoin at issue.

In brief, in this letter we first note that there are plainly substantial arguments for the proposition that the 9/11 Claimants and the other Iran Terror Victim Claimants do possess standing to seek execution on the Bitcoin at issue pursuant to TRIA. We then show that accordingly the Court should, at a bare minimum, defer decision of the standing issue until the issue has been fully briefed and argued, rather than immediately ban the 9/11 Claimants from this proceeding altogether as requested by the government.

Second, we demonstrate that there is ample good cause to grant the *O'Neill* Claimants' (and the other 9/11 Claimants') request for a modest extension of time, in important part because the government played a significant role in causing the 9/11 Claimants' delay in filing their claims that the government now complains of. The government did so by giving notice of its forfeiture proceeding by means and in a form very poorly calculated to give the 9/11 Claimants and the other Iran Terror Victim Claimants actual notice of the government's forfeiture proceeding and of its connection to their Iran judgments. *See Pioneer Inv. Servs. Co. v. Brunswick Ltd. Partnership*, 507 U.S. 380, 398-99 (1993).

**A. <u>Standing</u>**

In its letter, the government raises a number of arguments why, in its view, the Bitcoin at issue is not properly subject to execution under TRIA by victims of Iranian sponsored terror. There are, of course, substantial counterarguments on the other side of this issue. Those counterarguments have already been set forth in some detail for this Court by other Claimants herein and (in the interest of brevity) will not be repeated here. (A full exposition of these counterarguments is set forth in the Complaint in *Fritz, et al. v. Iran and China Development Group,* No. 25-cv-793 (RPK) (E.D.N.Y.), and those counterarguments are aptly summarized by the *Goldstar* Claimants at ECF 167, pp. 1-2, both of which the 9/11 Claimants adopt by reference here).

What the government does not do in its letter, however, is give any reason why this complex issue concerning the proper application of TRIA and its interaction with the laws governing federal forfeiture proceedings – an issue the resolution of which will decide the ultimate disposition of approximately twelve billion dollars in Bitcoin, and the ability of thousands of victims of terror to hold Iran accountable for the murder of their loved ones –

should be summarily and conclusively resolved in the government's favor based on the government's brief January 27 letter to the Court, without the benefit of full briefing and argument by all concerned.

We respectfully submit that this issue concerning the 9/11 Claimants' (and the other Iran Terror Victim Claimants') entitlement to the Bitcoin is a serious and momentous one that deserves a *full* hearing before this Court. It should not be decided based on a few paragraphs included in letters chiefly devoted to debating what amounts to a request for a short extension of a filing date. The government's effort to deprive the 9/11 Claimants of their day in court on this issue is unwarranted and, indeed, unworthy of the government. *See United States v. Borromeo*, 750 F.2d 750, 753-54 (4th Cir. 1991) ("We cannot applaud the government's effort to deny [claimant] a hearing on the merits of her claims.… The government may still 'win the money,' but it must let [the claimant] into the courthouse.")

Moreover, as the government itself notes, the Court must in any event grapple with these very same complex issues concerning TRIA in connection with the unquestionably timely *Fritz* Claim. Accordingly, the 9/11 Claimants ask that, at a minimum, the Court reserve judgment on the question of the 9/11 Claimants' standing until the Court has ruled on the same issues in connection with the *Fritz* Claim.

**B. <u>Good Cause for Delay in Filing</u>**

A number of Iran Claimants, including the 9/11 Claimants (ECF 66, 162 and 163), have already set forth the reasons why this Court should permit late filing of their claims, and have demonstrated in that connection that the applicable legal standard here is good cause rather than excusable neglect (as the government contends). (*See*, *e.g.*, ECF 167, at 2-3). *United States v. Starling*, 76 F.4th 92, 100 (2d Cir. 2023). Once again, in the interest of brevity, we will not repeat those reasons here but instead adopt them by reference.

We do, however, wish to make one important point not previously raised with the Court, namely: It is clear, at least in retrospect, that the government itself bears an important measure of responsibility for the fact that so many Iran Terror Victim Claimants first came forward only after the December 29 deadline for claims had passed. That is so because the government chose a form and means of notice of its forfeiture proceeding that was very poorly calculated to give actual notice of the proceeding to the Iran Terror Victim Claimants.

Indeed, that conclusion is almost self-evident. After all, it is exceedingly unlikely that tens of thousands of victims of Iranian terror – who are represented by many of the finest law firms in the United States, and who hold well over 100 billion dollars in judgments against Iran which they have actively sought to collect in multiple litigations in different jurisdictions over many years' time – were *all* simultaneously guilty of inexcusable "neglect."

Rather, the far more likely reason why these delays have been encountered is that the government failed to do what it should have when the government gave notice of its forfeiture

proceeding and thereby in effect started the clock running for the Iran Terror Victim Claimants to come forward.

**- Inadequate Notice -**

Rule G(4)(b)(i) provides: "the Government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."

Rule G(4)(a)(iv) further provides in relevant part that where, as here, the government gives notice by publication:

> The government should select from the following options a means of publication *reasonably calculated to notify potential claimants of the action*.
>
> (A) If the property is in the United States, publication in a newspaper generally circulated in a district where the action is filed, where the property was seized, or where property not seized is located; …
>
> (C) Instead of (A) or (B), posting a notice on an official government forfeiture site for at least 30 consecutive days.

(Emphasis added.)

Here, the government did not give adequate notice. To begin with, the government did not give direct notice to any of the Iran Terror Victim Claimants, all of whom have now asserted claims under TRIA against the Bitcoin on the theory that the Bitcoin is an Iranian blocked asset that is subject to execution by victims of Iranian-sponsored acts of terrorism who hold judgments against Iran.

The government will likely contend that there was no requirement to give direct notice to the Iran Terror Victim Claimants because the government disputes the validity of their claims under TRIA. But Rule G(4) does not require that notice be given solely to those claimants whom the *government agrees* possess valid claims. Rather, Rule G(4) requires that the government give direct notice to anyone who "reasonably appears to be a potential claimant." The 9/11 Claimants and the other Iran Terror Victim Claimants fall into this category.

Even more importantly, the government did not choose a *means* of publication "reasonably calculated" to notify potential claimants of the action as required by Rule G(4)(a)(iv). Indeed, this proposition would seem to fall into the category of *res ipsa loquitur*.

Here, the government chose to give notice by publication on the government's forfeiture website. On information and belief, the announcements concerning this forfeiture proceeding that appeared on the government's website made no mention whatsoever of the government of Iran, or of any connection between Iran and the Bitcoin. (This point is made on information and

belief because it appears that the announcements are no longer available on the government's website.) Generally, these notices provide only the description of the assets subject to forfeiture (with the same description as that given the Defendant assets in the caption of the civil-forfeiture verified complaint), and they refer the reader to the case number where the *In Rem* Complaint was filed. Neither the language "Approximately 127,271 Bitcoin ('BTC') Previously Stored at the Virtual Currency Addresses Listed in Attachment A, and All Proceeds Traceable Thereto" nor the actual Verified Complaint *In Rem* (ECF No. 1) provide information regarding the Iranian government's role in the Bitcoin-mining operations at issue in the case beyond a single reference in paragraph 16.u. that states, "Lubian was a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and Iran." Further, the grounds for the civil forfeiture asserted in the Verified Complaint appear to purposefully omit reference to Iranian Sanctions legislation arising out of the International Emergency Economic Powers Act and the Trading With the Enemy Act because such references would divulge what the government already knows: that these assets are blocked assets as that term is defined under TRIA. Such notice was obviously not "reasonably calculated" to notify or alert the Iran Terror Victim Claimants that they had a potential interest in this forfeiture proceeding.

The proverbial proof is in the pudding. As noted, among the 9/11 Claimants represented herein alone, there are over 12,000 claimants holding more than 93 billion dollars in judgments against Iran. The larger group of Iran Terror Victim Claimants are represented by many of the finest firms in the country, all of whom have been intensely interested for many years in tracking down Iranian assets in order to satisfy their collective judgments. Yet only one group (the *Fritz* Claimants) was able from the notice given by the government here (or, more likely, from some other source) to appreciate the potential impact of the government's forfeiture proceeding on their judgments against Iran in time to file a claim by the original December 29 deadline.

It strains credulity to think that the many non-*Fritz* Iran Terror Victim Claimants here were *all* guilty of "neglect" – excusable or otherwise. Rather, the obvious reason why so many Iran Terror Victim Claimants have sought permission to file beyond the original December 29 deadline is that the government did a poor job in giving notice of the Bitcoin forfeiture proceeding. At least in retrospect, it is now clear that notice should have been made in a newspaper (such as the *New York Times* or *New York Law Journal*) rather than on the government's forfeiture website, and in a form that made at least *some* mention of the government of Iran.

Even more to the point – in terms of using a *means* of publication "reasonably calculated" to give actual notice to the Iran Terror Victim Claimants – it would have been a simple matter for the government to publish a notice of the forfeiture proceeding on the website of the United States Victims of State Sponsored Terrorism Fund ("VSST Fund") (which is also operated by the Department of Justice) and thereby alert the Iran Terror Victim Claimants (the overwhelming majority of whom participate as claimants in the VSST Fund) and their counsel to the existence of this forfeiture proceeding. *See United States v. Real Properties Located at 7215 Longboat Drive*, 750 F.3d 968, 973-74 (8th Cir. 2014) (Because government did not comply with notice regime laid out by Rule G, claims filed after deadline were not untimely); *Borromeo*, 945

F.2d at 752-53 (proper service by government is a prerequisite to any objection by government to timeliness of claim).

In short, there was ample good cause for late filing here, because the government gave inadequate notice that was not reasonably calculated to alert the Iran Terror Victims of their interest in this proceeding. The good cause standard "attaches consequences only to bad faith or tactical violations of court orders." *Starling*, 76 F.4th at 102. The government does not even attempt to claim that the Iran Claimants acted in bad faith or engaged in any such violations. Accordingly, good cause is clearly made out here.

**C. Excusable Neglect**

Assuming only for argument's sake that (as the government contends) the appropriate legal standard here is "excusable neglect" (rather than good cause), the 9/11 Claimants easily meet that standard too, for many of the same reasons.

When analyzing "excusable neglect," a court should consider "the danger of prejudice to the [movant], the length of the delay and its potential impact on proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993).

In applying this standard, the Court should be mindful that:

> The Second Circuit prefers to resolve disputes on their merits and not by default. "Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed . . . "While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

*United States v. $96,000 in United States Currency*, No. 18-cv-5993 (NZC) 2019 WL 3334493 at * 3 (E.D.N.Y. 2019) (internal citations omitted).

Here (as noted), the chief reason for the 9/11 Claimants' delay (and the other Iran Terror Victim Claimants' delay) in filing claims is plain: the government's website notice of the proceeding (which made no mention of Iran) was poorly calculated to give the Iran Terror Victim Claimants actual notice of the forfeiture proceeding and of Iran's connection to the Bitcoin. That this was the most important reason for the delay is almost self-evident; that is so because as soon as word of the Bitcoin and its connection to Iran did spread among members of the anti-terrorism bar as a result of the *Fritz* Claimants' separate turnover action, the Iran Terror Victim Claimants rapidly came forward to file claims.

Thus, there is very good reason for the brief delay encountered here, and that delay was not fully within the 9/11 Claimants' "reasonable control," *Pioneer*, *supra*, because the delay was in important part the result of the *government's* choice to utilize a poor means and form of notice. *See Pioneer*, 509 U.S. at 398-99 (Failure to give prominent notice accompanied by explanation of its significance supported finding that neglect was excusable, permitting late filing of motion); *In Re O'Brien Environmental Energy, Inc.*, 186 F.3d 116, 128-30 (3d Cir. 1999) (finding excusable neglect, and noting that the court should take into account the fact that the non-moving party also played a role in causing delay by giving notice that did not highlight the relevant issues.) The government's decision to limit the legal bases for which it was seeking the forfeiture in its Verified Complaint by omitting any reference to violations of Iranian Sanctions or the role of the Iranian government in the Bitcoin-mining operations does not obviate the fact that "an asset may be 'frozen' and thus 'blocked' under IEEPA even if some other statute allows particular uses or transactions for the funds. And although section 853 authorizes both asset blocks and criminal-forfeiture proceedings against the blocked assets, it does not displace the IEEPA block." *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 641 (D.C. Cir. 2025).

As to the other factors relevant to excusable neglect, the length of the delay here is minimal, and the government (quite properly) does not even attempt to argue that any of the Iran Terror Victim Claimants has failed to act in utmost good faith. Nor can the government make a convincing case that it has somehow been "prejudiced" by the brief delay at issue. All the government can offer in this regard is to say that excusing the delay will result in more claimants having their claims considered on the merits by this Court.

Allowing additional claimants into the case is not "prejudice." "Prejudice" means a tendency to resolve an issue or a case on some basis other than the merits. *See* Black's Law Dictionary, "Prejudice: A forejudgment; bias; preconceived opinion. A leaning toward one side of a cause *for some reason other than a conviction of its justice*." (citations omitted) (emphasis added).

So, for example, the government could credibly claim that "prejudice" was caused by the delay here *if* that delay had hurt the government's case for forfeiture *on the merits* because valuable evidence became unavailable during the period of delay. *See Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) (No showing of prejudice where there is no claim that "witnesses have died, that memories have dimmed beyond refreshment, that some discovery has been thwarted or that evidence has been lost.")

But the government is *not* prejudiced merely because additional claimants who are victims of Iranian terror will be permitted to have this Court consider their claims on their merits. *See United States v. Roberts*, 978 F.2d 17, 23 (1st Cir. 1992) ("We have consistently declined either to infer prejudice from the mere passage of time (particularly a short period of time) or to hold that simply requiring a party to litigate amounts to prejudice.") *See also Smith v. Los Angeles Unified School District*, 830 F.3d 843, 858 (9th Cir. 2016) (when assessing "prejudice" in context of timeliness of motion to intervene, prejudice refers to prejudice *resulting from the*

*delay*; it does not refer to mere fact that adding parties will make the case more difficult to resolve).

Moreover, if the requested extensions of time are denied, the Iran Terror Victim Claimants will still presumably assert essentially the same claims to the Bitcoin, but through the procedural vehicle of separate attachment, execution, and turnover proceedings (like the *Fritz* Claimants' turnover proceeding) instituted by each group of Claimants. As a result, denying the requested extension will not prevent a "flood" of claims, as the government asserts; it will instead merely move the same "flood" of claims into scattered, and therefore less convenient, separate actions. Thus, the interests of judicial economy and of simple fairness both support granting the requested extensions.

**D. <u>Conclusion</u>**

In sum, the government does not and cannot present any good reason for denying the requested extension. The 9/11 Claimants respectfully submit that this Court should grant the requested extension so that the Court can decide their claims to the Bitcoin on the merits after hearing a full presentation on the law and the facts from the 9/11 Claimants, from the government, and from all concerned.

We therefore once again ask that the Court grant our motion to extend the time to file our claims.

Respectfully submitted,

**ANDERSON KILL P.C.**
By: */s/ Jerry S. Goldman*
Jerry S. Goldman, Esq.
Hon. Ethan Greenberg (Ret.)
7 Times Square, 15th Floor
New York, NY 10036
Tel.: (212) 278-1000
jgoldman@andersonkill.com
egreenberg@andersonkill.com
*Attorneys for O'Neill 9/11 Claimants*

**KREINDLER & KREINDLER LLP**
By: */s/ Megan Wolfe Benett*
Megan Wolfe Benett, Esq.
Justin Green, Esq.
485 Lexington Ave
New York, NY 10017
Tel.: (212) 973-3438
mbenett@kreindler.com
jgreen@kreindler.com
*Attorneys for Ashton 9/11 Claimants*

**MOTLEY RICE LLC**
By: */s/ John M. Eubanks*
John M. Eubanks, Esq.
John C. Duane, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
jeubanks@motleyrice.com
jduane@motleyrice.com
Tel.: (843) 216-9218
*Attorneys for Burnett 9/11 Claimants*

**SPEISER KRAUSE, P.C.**
By: */s/ Jeanne M. O'Grady*
Jeanne M. O'Grady, Esq.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
jog@speiserkrause.com
Tel.: (914) 220-5333
*Attorneys for Ashton-Burlingame 9/11 Claimants*