Crowell

**Kelly T. Currie**
KCurrie@crowell.com
(212) 895-4257 direct

Crowell & Moring LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
+1.212.223.4000 main
+1.212.223.4134 fax

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

February 6, 2026

Re: *United States v. Approximately 127,271 Bitcoin*, Civil Docket No. 25-5745 (RPK)

Dear Judge Kovner:

On behalf of the Iranian Terrorism Victims, undersigned counsel respectfully submits this letter in reply to the government's January 27, 2026 submission (ECF No. 126), pursuant to the Court's January 29, 2026, Order permitting certain claimants to reply.[1]

Each of the Iranian Terrorism Victims has a final, enforceable judgment, entered pursuant to 28 U.S.C. 1605A (or its predecessor 28 U.S.C. 1605(a)(7)), against the Islamic Republic of Iran ("Iran") resulting from Iran's sponsorship of terrorist attacks. After learning that the Defendant Cryptocurrency is an asset of Iran, a fact that was not included in the Government's Complaint, the Iranian Terrorism Victims promptly filed notice of their claims. The Government now seeks to deny the Iranian Terrorism Victims, and thousands of other victims of Iranian-sponsored terrorism, the opportunity to collect on their judgments. The government has presented no valid justification to deny these victims of significant state sponsored atrocities an opportunity to proceed in this matter. The Court should grant the Iranian Terrorism Victims leave to file their claims.

The Government incorrectly argues that this Court should address the Iranian Terrorism Victims' claims under the "excusable neglect" standard, ignoring that this Court has previously applied the "good cause" standard when considering whether to extend the deadline to file claims for other claimants. *United States v. Approximately 127,271 Bitcoin "BTC" Previously Stored at the Virtual Currency Addresses Listed in Attachment A*, 2025 WL 3652955, at *1 (E.D.N.Y. Dec. 11, 2025). In so doing, this Court explained that though "[t]his Circuit has not set express guidelines regarding the scope of good cause … [n]umerous courts have held–in the analogous context where the Court extended the deadline for a late-filed claim—that where putative claimants have placed the court and the government on notice of their interest in the property and their intent

[1] The Iranian Terrorism Victims filed their notice on January 14, 2026, (*see* Dkt. No. 52). The Court construed the "notice of verified claim as a motion for leave to file a verified claim" and initially ordered the Government to respond by January 23, 2026 (*see* January 15, 2026 Order), before extending the Government's deadline to January 27, 2026, after similar claims were filed by other victims (*see* January 20, 2026 Order).

to contest the forfeiture, courts will grant extensions of time, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances." *Id.* (citation modified). While the Court's ruling was limited and stated that "to the extent additional third parties hope to file claims opposing forfeiture in this action, they may do so by 12/29/2025," the Court did not suggest that any additional claimants making extension applications should be subject to heightened "excusable neglect" standard. *Id.* at *2.

In *United States v. Starling*, the Second Circuit observed that Rule G "sets deadlines for when a claim to the defendant assets 'must be filed . . . unless the court for *good cause* sets a different time,'" and "gives no indication that a harsher standard should govern a later motion." 76 F.4th 92, 100 (2d Cir. 2023) (quoting Suppl. Rule G). Under the "good cause" standard, in the default context, courts look to "(i) the willfulness of the defaulting party, (ii) prejudice to the non-movant, and (iii) whether the defaulting party has a meritorious defense." *Id.* at 102.

Even if the "excusable neglect" standard applies, the Government's rigid interpretation ignores the Second Circuit's guidance that "excusable neglect" is an "elastic concept" that considers "all relevant circumstances surrounding a party's omission." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). The Government's limited view of "excusable neglect" fails to recognize the intentionally equitable nature of this standard and that the "Second Circuit prefers to resolve disputes on their merits and not by default." *U.S. v. $96,000.00 in United States Currency*, 2019 WL 3334493, at *3 (S.D.N.Y. July 25, 2019); *see also U.S. v. $15,115.00 United States Currency*, 2021 WL 3507894, at *2 (W.D.N.Y. Aug. 10, 2021) ("The inquiry into whether a claimant has shown 'excusable neglect' is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'") (citation omitted). "Courts examine the following four factors to find excusable neglect: 1) the danger of prejudice to the non-movant; 2) the length of the delay and its impact on proceedings; 3) the reason for the delay including whether it was within the reasonable control of the movant; and, 4) whether the movant acted in good faith." *$96,000.00 in United States Currency*, 2019 WL 3334493, at *3.

The Iranian Terrorism Victims satisfy both the good cause and excusable neglect standards and should be permitted to file their claims. The Iranian Terrorism Victims' delay in filing their claims was minimal, did not result from their bad faith or inexcusable neglect, and has not prejudiced the Government or any other party.

The Government did not provide the Iranian Terrorism Victims any notice of this action. The Government argues that the Iranian Terrorism Victims' claims should be ignored because they were not submitted by December 15, 2025, 60 days from when the Government "published notice of this action on its official forfeiture website" or by the extended December 29, 2025, deadline the Court set. Response at 3. The Government makes this argument despite the fact that their Complaint notably does not identify the Defendant Cryptocurrency as Iranian and the Government made no attempt to provide the Iranian Terrorism Victims direct notice of this action. *See* Rule G(4)(b)(i) (requiring that "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B).").

The Government's claim that the Complaint was "highly publicized" is equally unavailing. The Iranian Terrorism Victims' claim is based on the connection between the Defendant

Cryptocurrency and Iran, a connection that is missing from the Government's Complaint *See generally* ECF No. 1. The Complaint is suspiciously devoid of any mention of Iran, only referencing it in a single instance when stating "Lubian was a Chinese bitcoin mining operation that maintained bitcoin mining facilities across Asia, including in China and Iran." Complaint ¶ 16(u). Regardless of the reason why this information was omitted, it is clear that the publicized nature of the Complaint could not have served to inform the Iranian Terrorism Victims of their right to assert their claims.

On December 26, 2025, another group of victims filed a separate suit, alleging that LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. sanctions. *See generally Fritz v. Iran and China Investment Development Group d/b/a Lubian.com*, No. 25-cv-07093 (E.D.N.Y.), Dkt. 1. The Iranian Terrorism Victims only became aware of that separate suit and its allegations when those victims filed claims in this action on December 29, 2025, the last possible day to do so based on the Court's extended deadline. Upon becoming aware of the actual nature of the Defendant Cryptocurrency, the Iranian Terrorism Victims acted promptly in filing their claims.

The Government argues that permitting the Iranian Terrorism Victims' claims to proceed to the merits "would prejudice the Government by opening the door to an extremely large number of similarly situated—and similarly untimely—putative claimants." Response at 4. When the Iranian Terrorism Victims filed their claims, no discovery had commenced (and has not since), the Court had not yet ruled on any substantive issues affecting any of the claimants, the Government had already received timely notice of the existence of substantially related claims from other victims, and the Court had extended the deadline for other parties to file claims which had not yet lapsed. Thus, any perceived prejudice to the Government stems not from the timing of the Iranian Terrorism Victims claims, but from having to respond to them at all. The general burden of having to respond to claimants cannot be seen as a "prejudice" on the Government.

In addition to challenging the timeliness of the Iranian Terrorism Victims' claims, the Government also contends that the claims would fail on the merits, ignoring that at this stage, the Iranian Terrorism Victims need not prove the full merits of their claim and must only show a "facially colorable interest" to be permitted to proceed. *U.S. v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) ("[T]o establish standing the claimant need not prove the full merits of [his] underlying claim … [a]ll that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court.") (citation and quotation marks omitted). The Iranian Terrorism Victims have established, at a minimum, a "facially colorable interest."

The Terrorism Risk Insurance Act ("TRIA") provides a sufficient basis for the Iranian Terrorism Victims' claims. *See* Pub. L. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified at 28 U.S.C. § 1610 Note. TRIA authorizes the Iranian Terrorism Victims to attach and execute on any blocked assets of Iran or any blocked assets of any agency and instrumentality of Iran, "[n]otwithstanding any other provision of law." 28 U.S.C. § 1610 note. Once an asset qualifies as a "blocked asset," TRIA's execution remedy becomes available and a subsequent forfeiture proceeding does not negate that remedy.

The Government argues that the Defendant Cryptocurrency is not a blocked asset because it was not seized or forfeited under the International Emergency Economic Powers Act ("IEEPA") or the Trading With the Enemy Act ("TWEA"). Response at 7. This argument overlooks that the Government has used its authority under the IEEPA statute to "block" all Iranian property in the United States, including the property of agencies or instrumentalities of Iran. 31 C.F.R. §§ 510.211, 594.201(a)(5). Executive Order 13599 blocks "[a]ll property and interests in property of the Government of Iran, including the Central Bank of Iran, that are in the United States or within the possession or control of any United States person." Exec. Order No. 13,599, 77 Fed. Reg. 6659 (Feb. 5, 2012). The authority for the Government to issue these blocking regulations originates in IEEPA. *See, e.g., Kirschenbaum v. 650 Fifth Avenue and Related Properties*, 830 F.3d 107, 120-121 (2d Cir. 2016) ("In 2012, President Obama, acting pursuant to the authority conferred on him under the IEEPA, issued Executive Order 13,599[.]").The Second Circuit has held on several occasions that the blocking of assets pursuant to these regulations can be sufficient to render them blocked for purposes of TRIA. *See, e.g.*, *Id.* at 137 ("[A]ll assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked."); *see also Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 98 n.6 (2d Cir. 2022) ("[B]ased on the Supreme Court's reasoning … we held in [*Kirschenbaum*] that—regardless of whether it has been frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is 'blocked' within the meaning of TRIA[.]").

Based on the information alleged in the *Fritz* suit, the Iranian Terrorism Victims have far more than a "facially colorable interest" in the Defendant Cryptocurrency. They are judgment creditors of Iran as a result of Iran's acts of state sponsored terrorism. As has now been alleged, because the Iran-China Group was an agent or instrumentality of Iran, TRIA entitles the Iranian Terrorism Victims to execute on the Defendant Cryptocurrency to satisfy those judgments "[n]otwithstanding any other provision of law." TRIA § 201(a).

For the foregoing reasons, the Iranian Terrorism Victims respectfully request that the Court extend the filing deadline to the date of their claim.

/s/ Kelly T. Currie
Kelly T. Currie

CROWELL & MORING LLP
Two Manhattan West
375 9th Avenue
New York, NY 10001
(212) 895-4257
KCurrie@crowell.com

Alexander J. Kramer (*pro hac vice*)
Michael J. Williams (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004

Crowell

(202) 624-2500
Akramer@crowell.com
Mwilliams@crowell.com

*Attorneys for Claimants*